ELKINS *v.* ALICEVILLE.

Opinion delivered January 25, 1926.

1. CONTRACTS—EVIDENCE.—Contracts may be made by letters and telegrams, and, when so evidenced, it is the duty of the trial court to interpret the contract and declare its terms.
2. CONTRACTS—MODIFICATION.—A contract may be varied by the parties before performance, as the power to enter into the contract equally authorizes them to abrogate or modify it, and this right to change or modify the contract equally extends to a change in the time of performing it.
3. CONTRACTS—MODIFICATION—CONSIDERATION.—Where the parties to an agreement agree to rescind it in whole or in part, and make a new agreement in lieu thereof the substitution of the new obligation constitutes a sufficient consideration.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

STATEMENT BY THE COURT.

M. W. Elkins brought this suit in the Pulaski Chancery Court against the Southern Trust Company to restrain it from paying to the town of Aliceville, Ala., his check for $1,000, payable to said town and certified by said bank.

The ground upon which the injunction was asked was that the town of Aliceville had breached a contract whereby he was to purchase certain bonds issued by it, and the $1,000 certified check had been given by him to secure the faithful performance of said contract on his part.

The town of Aliceville was allowed to file an intervening petition in which it denied that it had breached the contract and averred a breach of contract on the part of the plaintiff. By way of cross-complaint, the town of Aliceville sought to recover against M. W. Elkins the sum of $1,000 as damages for breach of said contract by him.

It appears from the record that on the 25th day of January, 1923, M. W. Elkins, who is a bond broker in the city of Little Rock, wrote a letter to the town of

Aliceville, Alabama, inclosing a bid for certain school bonds which were advertised to be issued and sold by said town. We copy that part of the letter which is material to the issues in the case, which is as follows:

"For your $11,000 of school bonds and $10,000 of waterworks bonds, bearing 6 per cent. interest, payable semi-annually at the Chase National Bank, New York, all the bonds maturing March 1, 1923, we bid you 98 cents and accrued interest, upon the following conditions: That you furnish us with the unqualified approving opinion of John C. Thompson of New York, or Wood & Oakley of Chicago; that the bonds are payable from an ad valorem tax, and that you deliver us the bonds in Little Rock, as provided above, within sixty days from this date, accompanied by the final approving opinion and non-litigation certificate."

On February 2 the proper authorities of the town of Aliceville sent a telegram to M. W. Elkins at Little Rock, which informed him that his bid for Aliceville bonds was accepted, and he was directed to send a certified check for $1,000.

On the 16th day of February, 1923, Elkins wrote to the town council of said town that he was sending a certified check for $1,000, to be held in accordance with the contract for the purchase of bonds, dated February 2, and added that, should he fail to take the bonds as provided in said contract, the certified check would be forfeited to said town as full and liquidated damages. It was also suggested in the letter that the town should get up a complete transcript of its proceedings in the matter, and send it to Wood & Oakley, at Chicago, for examination. The letter also contained the following:

"We are indeed glad to have this business with you and assure you there will be no delay on our part in taking up the bonds when we secure Wood & Oakley's opinion. Wood & Oakley can furnish us with bond form, and we can have the bonds printed here and sent direct to you for execution."

On March 7, 1923, Elkins wrote to the town of Aliceville the following:

"In reply to your letter of the 5th on the above matter, in which you quote Wood & Oakley's letter, it seems that it would be an easy matter to comply with their requirements. We are perfectly willing to accept serial bonds. In fact, we prefer them. We take it from your letter that you are willing to sell us the bonds at 96 cents and that you furnish no legal opinion whatever. In other words, leave the opinion up to us. We would not want the bonds at any price without some recognized bond attorney's approving opinion. You must bear in mind that the district has made a contract with us for the sale of the bonds. We note that you want a check for $1,000 that you can use. You have a check now for $1,000 certified by the Southern Trust Company of this city, to be forfeited to the district if we fail to comply with our contract. We are willing to do anything that is reasonable and right, but we would not be willing for you to throw out our bid. We would suggest that you go ahead and comply with Wood & Oakley's requirements and make delivery of the bonds to us as soon as you can."

The town delivered Elkins' letter and told him that he could have the bonds at 96 cents on the dollar and the accrued interest, provided he would pay the attorney's fees and other expenses.

On March 12, 1923, Elkins wrote to the town of Aliceville the following:

"In reply to your letter of the 21st, we will take the above bonds at 96 cents and pay the attorney's fees and printing the bonds. We suggest that you write Wood & Oakley at once to prepare such papers as they require. By proceeding in this way, in our opinion, you will save time. We are anxious to secure delivery of the bonds, and suggest that you furnish Wood & Oakley the information they require, and, as indicated above, suggest you have them draw such papers as they want passed."

On the 3rd of April, 1923, Elkins wrote the town to ascertain what progress it had made towards securing the final approving opinion of Wood & Oakley on the bond issue, and stated that he was anxious to secure the delivery of the bonds.

On May 3, 1923, Elkins wrote to the town as follows: "In reply to your letter of the 1st, inclosing schedule of the above bonds, will state that the maturities are satisfactory to us, and we are ready to take up the bonds as soon as Wood & Oakley give their final approving opinion. We would suggest that as soon as the bonds are ready you ship them to the Southern Trust Company, of this city, with Wood & Oakley's opinion attached, or instruct Wood & Oakley to send the transcript and their opinion direct to us."

On May 21, 1923, the town wired Elkins that it had secured the approving opinion of Wood & Oakley, and asked instructions in regard to the printing of the bonds. Under the date of May 22, 1923, Elkins wrote that it was satisfactory to him for the town to have the bonds printed. On June 16, 1923, the town wrote Elkins that the bonds had been printed and sent by registered mail to the Southern Trust Company at Little Rock, Ark., for delivery. On June 21, 1923, Elkins wrote to the town of Aliceville that he was not sure he could use the bonds at 96 cents for the reason that the bond market had declined materially in the last thirty days. On June 28, 1923, Elkins wrote to the town of Aliceville that the time for delivering the bonds upon the terms of the contract was up on March 12, 1923, and that he was under no moral obligation whatever to take the bonds. Subsequently Elkins declined to take the bonds at all except at a reduced price. Proof was made by the town of Aliceville to the effect that the damages suffered by it on account of the breach of the contract by Elkins amounted to more than $1,000.

The chancellor found the issues in favor of the intervener, the town of Aliceville, and from a decree in its

favor M. W. Elkins has duly prosecuted an appeal to this court.

*John F. Clifford,* for appellant.

*Cockrill & Armistead* and *John W. Newman,* for appellee.

HART, J., (after stating the facts). Contracts may be made by letters and telegrams, and, when so evidenced, it is the duty of the trial court to interpret the contract and declare its terms. *Mann* v. *Urquhart,* 89 Ark. 239; *Cage* v. *Black,* 97 Ark. 613; *Porter* v. *Gossell,* 112 Ark. 380; *Hart* v. *Hammett Grocer Co.,* 132 Ark. 197; and *Mantle Lamp Co.* v. *Read,* 160 Ark. 355. The principles of law decided in these cases are recognized as controlling by counsel for the plaintiff, but he claims that under the original contract the time for performance expired at the end of sixty days, and that after this time the plaintiff was under no legal obligation to take the bonds. In carrying out and applying the rule of law above announced, the parties to a contract may modify or waive their rights under it and engraft new terms upon it by letters, and in such case the promise of one party is the consideration for that of the other. In other words, a contract may be varied by the parties before performance for the reason that the power to enter into the contract equally authorizes them to abrogate or modify it, and this right to change or modify the contract equally extends to a change in the time of performing it. *Parmelee* v. *Thompson,* 45 N. Y. 58, 6 Am. Rep. 33.

It will be noted from the letters quoted and referred to in our statement of facts that, after the expiration of the sixty days, Elkins treated the contract as continuing in force, and finally secured a change in its terms by proposing to accept the bonds at a lower price and pay the attorney's fees, which proposal was accepted by the town of Aliceville. Subsequently, on May 3, 1923, Elkins wrote to the town of Aliceville a letter in which he stated that the maturities of the bonds to be issued were satisfactory to him, and that he was ready to take up the bonds

as soon as Wood & Oakley gave their final opinion. Thus he recognized that the modified contract was still in force, and their correspondence shows that the town of Aliceville, in reliance upon his letters, proceeded with the matter, had the bonds printed and signed by the proper authorities, and secured the approving opinion of Wood & Oakley in June.

There is no rule of law forbidding the relinquishment of an existing contract and the substitution of a new one in its stead, and that is what was done in the case at bar. Under the original contract, Elkins was to give the town of Aliceville 98 cents on the dollar for the bonds issued by it. Under the substituted agreement he was to give the town 96 cents on the dollar for the bonds and to pay the attorney's fees for examining them. It is well settled that the parties to a contract may at any time rescind it in whole or in part by mutual consent, and the surrender of their mutual rights and the substitution of new obligations is a sufficient consideration. *Ozark & Cherokee Central Railway Co.* v. *Ferguson,* 92 Ark. 254, and *Cook* v. *Cave,* 163 Ark. 407 and cases cited.

The town of Aliceville, by agreeing to take a less sum for the bonds, and Elkins by extending the time for securing the approval of the bonds by the town of Aliceville, waived performance of the contract as originally made, and the parties substituted a new agreement in its place. The mutual promises of the parties in respect to the substituted agreement constituted a good consideration for its execution.

It follows that the decree will be affirmed.