ECONOMY SWIMMING POOL CO. *v.* FREELING.

5-2982                                    370 S. W. 2d 438

Opinion delivered September 16, 1963.

*Willis V. Lewis,* for appellant.

*Wright, Lindsey, Jennings, Lester & Shults,* for appellee.

JIM JOHNSON, Associate Justice. This action arises out of a contract for the construction of a fallout shelter entered into on October 10, 1961, between appellees Richard N. Freeling and Marie H. Freeling, his wife, and appellants Economy Swimming Pool Co., Inc., and George P. Bilheimer, Jr. Appellants agreed, *inter alia,* that the shelter would be constructed with materials of good quality and that all work would be done in a good workmanlike manner and "that the contractor [appellants] will be responsible for any water seepage into the vestibule or shelter and will repair same."

Appellees made a down payment in the amount of $500.00 on the contract, and work was begun on October 17, 1961. On October 26, 1961, appellees complained that the excavation was not of sufficient depth and that proper footings for the shelter had not been provided according to the plans and specifications. As the work progressed, appellees made frequent and additional complaints and employed a structural engineer to inspect the construction and advise appellees as to the quality of the

work and whether it was in accordance with the plans and specifications.

Water seepage was one of the major problems. One wall of the fiberglass shelter bulged, which had to be corrected by appellants. The concrete was honeycombed. The overhead concrete slab was not resting on the columns designed to support it. Finally, one wall of the shelter caved in.

After working for over three months on this relatively small job, appellants on January 20, 1962, padlocked the shelter and put a fence around the top of it. A few days later appellants removed the air filter and air motor from the premises.

On February 13, 1962, appellees filed suit in the Pulaski Chancery Court alleging breach of contract by appellants and seeking rescission of the contract, recovery of the $500.00 down payment and damages to the premises of appellees. They also sought to have the liens against their property discharged by appellants.

This case was tried on September 12, 1962, and after hearing evidence on behalf of all parties, the Chancellor found in favor of appellees on the issue of the return of the $500.00 down payment and the discharge of the materialmen's liens, but did not award appellees any sum for damages to their property. The Chancellor also denied appellants' cross-complaint for the total sum mentioned in the contract. From the decree appellants prosecute this appeal. Appellees have not cross-appealed.

For reversal appellants contend that they were prevented from performing the contract by the fault of appellees and that appellants are entitled to recover the profits which would have been made had appellees carried out their contract.

From the record, it is true that some delays were occasioned by appellees' concern and determination to receive that which they had contracted for. From the whole case, however, it can hardly be said that the delays were not justified.

On the question of appellants' entitlement to profits, there is no showing whatever that appellants would have made a profit on this job.

The structure here in question was sold to appellees to be used by them and their family in the event of nuclear attack. Soon after construction started, appellees employed the services of Mr. Sanford Wilbourne, a highly qualified structural engineer, to periodically check on the progress of the construction of the fallout shelter. This was an understandable precaution, since the record reveals that Mr. Freeling has been totally blind for some years, a fact not mentioned in his brief. Mr. Wilbourne testified that at the time he first saw the shelter in the fall of 1961 there were two problems, one structural and the other waterproofing. He testified that at that time he believed the structural defects could be corrected, but the waterproofing could never be solved because the concrete was porous—"honeycombed." Later, when he saw the bulge in the wall, he warned appellees not to let anyone enter the shelter because, in his opinion, "it was dangerous to be inside it just under ordinary circumstances." He further considered that the later cave-in of the wall was caused by outside water pressure as well as the weight of the concrete and steel dome resting on the fiberglass shelter instead of on the concrete columns. From his last examination of the shelter in the spring of 1962, about the time work was halted, his expert opinion was that the shelter could not possibly be made structurally sound.

Appellants' own construction superintendent testified that after he had been on the job for a month and three days the whole northeast corner of the shelter fell in and that it would continue to give trouble from hydrostatic (water) pressure. He admitted that he had never been able to correct the water problem; that during that time they had gotten the shelter dry one time and it had stayed dry only overnight.

Appellant Bilheimer himself admitted that he was contemplating suit against the manufacturer of the fiberglass shelter because he had found from experience that

the shelter would not withstand the hydrostatic pressure and that, if used according to the plans provided, would not do the job in this area.

It seems to be basic contract law—apparently so basic that there is little case law on the point—that where there is a material breach of contract, substantial non-performance and entire or substantial failure of consideration, the injured party is entitled to rescission of the contract and restitution and recovery back of money paid. *United States* v. *Haynes School Dist. No. 8,* 102 F. Supp. 843 (E.D. Ark. 1951) ; 17A C. J. S., Contracts, §420, p. 515 ; *Farrell* v. *Third National Bank,* 20 Tenn. App. 540, 101 S. W. 2d 158 ; 12 Am. Jur., Contracts, §440, p. 1020 ; 5 Williston on Contracts, 4046, §1455 ; Restatement, Contracts, §384(1), (1932) ; *id.,* §347 ; *Fish* v. *Valley National Bank,* 64 Ariz. 164, 167 P. 2d 107 ; *Barber* v. *Rochester,* 52 Wash. 2d 691, 328 P. 2d 711 ; *Texas Co.* v. *Northup,* 154 Va. 428, 153 S. E. 659.

From the testimony above reviewed and other testimony of the same character and nature contained in the record, on trial de novo, we are impelled to the conclusion that the learned Chancellor's finding that the contract was breached and that appellees were entitled to rescission, restitution and discharge of the materialmen's liens was not against the preponderance of the evidence. *Scott* v. *Vuurens,* 236 Ark. 731, 368 S. W. 2d 80.

Affirmed.