J.D. FISHER, *Appellant* v. Gerald JONES, Jones Olds-GMC-Buick, Inc., Mercedes-Benz of North America, Inc., Mercedes-Benz Credit Corporation, *Appellees*

Kelly Hill, Thelma C. Hill, Hill Investment Company, Hill Motor Cars II, Inc. and Hill Motor Cars, Inc., *Appellees/Cross-Appellants*

McIlroy Bank & Trust Company, *Appellee* v. John L. Fisher, James A. Fisher, Fisher Buick, Inc., Fisher Motor Cars, Inc., McIlroy Bank and Colonel Raymond C. Smith, *Cross-Appellees*

90-271                                    816 S.W.2d 865

Supreme Court of Arkansas
Opinion delivered September 30, 1991

*Joe Benson* and *Jennifer Morris Horan*, for appellant.

*Ball & Mourton, Ltd.*, by: *E.J. Ball* and *Andy E. Adams*, for appellees Gerald Jones and Jones Olds-GMC-Buick, Inc.

*Everett & Stutte*, by: *John C. Everett*, for appellee Mercedes-Benz of North America, Inc.

*Crockett & Brown, P.A.*, by: *R.J. Brown*, for appellees Kelly Hill, Thelma C. Hill, Hill Investment Co., Hill Motor Cars II, Inc., and Hill Motor Cars, Inc.

TOM GLAZE, Justice. This multi-faceted litigation revolves around the February 28, 1986, asset sale of a Mercedes-Benz dealership in Fayetteville, Arkansas by Fisher to Hill.[1] Hill took possession, continued the business without interruption, and was granted a Mercedes-Benz franchise. In October 1989, Hill defaulted on his monthly payments, shut down the operation, and removed the inventory and most of the supplies and equipment. On October 31, 1989, Fisher filed a complaint in Washington County Chancery Court (Case No. E-89-1524), and obtained a restraining order in an attempt to maintain the status quo. By amended pleadings he sought a money judgment on the balance due and rescission of the sale agreement with substitutionary restitution where appropriate. Hill, in a counterclaim, asked for rescission and damages.

A short time later, Fisher filed a second complaint in Washington County Chancery Court (Case No. E-89-1592) against, among others, Mercedes-Benz North America, Inc. (MBNA) to enjoin the transfer, sale or award of the Mercedes-Benz franchise, and also for specific performance of an alleged MBNA contractual obligation to now award the franchise to Fisher. The actions were consolidated for trial, and after trial on the merits, all claims, third party claims and counterclaims were dismissed. Both Fisher and Hill have appealed. The decisions of the trial court in denying rescission (E-89-1524), performance (E-89-1592), and other related claims are affirmed.

Fisher first chooses to argue that the chancellor erred in

---

[1] When referring to Fisher, we generally mean J. D. Fisher, but at times may include John L. Fisher, James A. Fisher, and Fisher Buick, Inc., d/b/a Fisher Motor Cars, Inc. Hill generally refers to Kelly W. Hill, but may include Thelma C. Hill, his wife, Hill Investment Co., Hill Motor Cars, Inc., and Hill Motor Cars II, Inc.

concluding MBNA was not legally obligated to re-issue its Fayetteville franchise to Fisher. The evidence, we believe, supports the chancellor's legal and factual conclusions on this point.

For many years prior to February 28, 1986, Fisher operated an automobile dealership at 2396 North College Avenue in Fayetteville. During the previous thirteen years, he held a Mercedes-Benz franchise with his then current franchise being for the two-year period from January 1, 1986, to December 31, 1987. On February 28, 1986, Fisher and Hill executed an offer and acceptance contract for the sale of the assets of the dealership for a total of $2,500,000.00. Payment, financed by Fisher, was to be in monthly installments of principal and interest over a period of twenty-five years. It was agreed that until Hill's performance was complete, Hill would not sell, without Fisher's written consent, described tracts of land, the dealership or the Mercedes-Benz franchise. Further, should Hill ever elect to transfer, relinquish, abandon or sell any interest in the franchise or either tract of land, Fisher would have the right of first refusal. Fisher consented to the transfer of the Mercedes-Benz franchise to Hill and their sale contract was subject to Mercedes-Benz approving the franchise transfer to Hill. Fisher agreed not to compete for five years within 100 miles. The parties placed the contract documents in escrow with McIlroy Bank & Trust Company, which was also to handle some disbursements.

Before the execution of the February 28, 1986 Fisher-Hill agreement, Fisher had notified MBNA of his plans to sell to Hill, had submitted the proposed sale agreement, and had stated that if Hill ever defaulted, Fisher wanted to get back the Mercedes-Benz franchise. Mercedes-Benz zone representatives, admittedly without authority to bind Mercedes-Benz to any franchise commitments, told Fisher that in the event of such a default, they saw no reason why Mercedes-Benz would not again award the franchise to Fisher, provided he still qualified.

Significantly, the record reflects that everyone involved knew and understood that MBNA had the exclusive right to select dealers, including successors, and that only the president or vice president of MBNA, headquartered in Montvale, New Jersey, had authority to act with respect to franchises. It was also recognized that MBNA would not discuss granting a franchise to

an applicant unless and until the current dealer had approved such a discussion. Accordingly, MBNA would not proceed to process an application until the current dealer had authorized its consideration or MBNA had canceled that dealership. In practice, MBNA did not proceed until there was submitted to it a proposed sale agreement between the terminating dealer and the proposed new dealer.

Hill's default problems included owing MBNA $31,751.18 and owing Mercedes-Benz Credit Corporation approximately $568,000.00 incident to his having sold automobiles "out of trust." That is, he sold mortgaged automobiles and retained the proceeds.

When Gerald Jones of Jones Olds-GMC-Buick, Inc. (Jones) observed Hill's Mercedes-Benz operation going out of business, he became interested in acquiring the Mercedes-Benz franchise in Fayetteville. Hill and Jones entered into an arrangement whereby Jones would pay to MBNA and Mercedes-Benz Credit Corporation a total of $301,000.00, provided that Jones was awarded the Mercedes-Benz franchise and provided further that MBNA and Mercedes-Benz Credit Corporation released Hill "of all debts that Hill owes to either." Thus, by Jones disbursing $301,000.00 to MBNA and Mercedes-Benz Credit Corporation, Jones would acquire a Mercedes-Benz franchise, and Hill would be released from debts totaling approximately $600,000.00.

From the foregoing, the chancellor determined that MBNA had not contractually obligated itself to deal with Fisher in the matter of the Mercedes-Benz franchise or to issue a franchise to Fisher. Further, the zone or regional officials of MBNA had no authority to bind the company to award a franchise, and Fisher had actual knowledge of such lack of authority.

In sum, the trial judge found that the Fisher-Hill agreement simply did not bind MBNA to any obligation. These findings cut across any suggestion made by Fisher that MBNA could be bound by zone officer representatives in Houston. They negate, as well, Fisher's claim that MBNA had in some way ratified statements attributed to their representatives that might otherwise have been reasonably relied on by Fisher, leading him to believe MBNA would reassign him the Fayetteville franchise after Hill defaulted. Furthermore, these facts in no way justify

Fisher's argument that a contract obligation should be imposed on MBNA so as to prevent an unjust enrichment.

■ Each of the chancellor's determinations was a permissible one and not clearly against the preponderance of the evidence. Accordingly, they cannot be set aside as clearly erroneous under Rule 52 of the Arkansas Rules of Civil Procedure.

■ Fisher also argues estoppel. While Fisher had high hopes and reasonable expectations that he would be re-awarded a Mercedes-Benz franchise, he, at all times, knew the relevant facts, was not ignorant of the true facts, and knew that he could not rely on his hope and expectations for favorable action. *See Foote's Dixie Dandy, Inc.* v. *McHenry*, 270 Ark. 816, 607 S.W.2d 323 (1980).

■ We mention, too, Fisher's argument that MBNA violated the Arkansas Franchise Act (Act) and, therefore, it would be fundamentally unfair for MBNA to refuse to renew, reassign or transfer the Fayetteville Mercedes-Benz franchise to Fisher. Under that Act, a franchisee is defined as a "person to whom a franchise is offered or granted." Ark. Code Ann. § 4-72-202(4). As already mentioned, the chancellor determined, permissably we have held, that MBNA had not contractually obligated itself to deal with Fisher in the matter of the franchise or to issue a franchise to Fisher. While the Act provides certain rights and imposes certain obligations between franchisors and franchisees, Fisher was not a franchisee after he sold his business to Hill. The Act simply is not applicable to the circumstances described in this case.

■ In sum, we hold the evidence supports the chancellor's decision that no express or implied contract existed and therefore no judgment against MBNA for specific performance could be granted. Thus, the decision in case E-89-1592 is affirmed.

In case E-89-1524, the balance admittedly owed by Hill to Fisher was in excess of $2,331,000.00 at the time of default. Fisher sought a money judgment on the contract balance due, less the value of assets returned, along with a declaration that the February 28, 1986, contract be rescinded and that the court determine the amount of substitutionary restitution. The chancellor was of the opinion that Fisher had not met the burden of

proof so as to entitle him to restitution, and concluded that the circumstances had been so altered by part execution that the parties could not even be closely restored to status quo so that it was impossible to grant rescission. We agree.

Fisher cites the case of *Economy Swimming Pool Company* v. *Freeling*, 236 Ark. 888, 370 S.W.2d 438 (1963), for the rule that where there is a material breach of contract, substantial nonperformance, and substantial failure of consideration, the injured party is entitled to rescind the contract and recover money paid thereunder. Fisher asserts that since $2,331,000.00 remained due on the $2,500,000.00 purchase price, Hill's failure to pay constituted substantial nonperformance of the parties' February 28, 1986 agreement. Furthermore, Fisher claims he and Hill can be restored to their original positions because Fisher has offered to excuse Hill's entire debt in exchange for Hill's return of the automobile dealership and two tracts of land to Fisher.

Hill's testimony, on the other hand, reflected that he had substantially performed under the parties' agreement. For example, he testified he was paying ten percent interest on this debt and had paid monthly payments of $24,100.00 for three and one-half years, totaling over $1,000,000.00. And, as has already been discussed, the Mercedes-Benz dealership franchise could not be restored to Fisher.

Even Fisher, in his argument, concedes the difficulty in trying to achieve a correct valuation of assets and application of credits and set-offs in any attempt to put the parties back to their original positions. The chancellor, on these facts, simply found such a goal to be unachieveable, and in our review of the record, we are unable to say his findings are against the preponderance of the evidence. *Economy Swimming Pool Company*, 236 Ark. 888, 370 S.W.2d 438.

Fisher attempts to avoid the chancellor's findings on the foregoing rescission issue by arguing the single exception to the "status quo" rule, *viz.*, parties can still rescind a contract if they mutually consent to do so. *See Herrick* v. *Robinson*, 267 Ark. 576, 595 S.W.2d 637 (1980). In other words, parties to a contract may at any time rescind it in whole or in part by mutual consent, and the surrender of their mutual rights and the substitution of new obligations is a sufficient consideration. *Afflick* v. *Lambert*,

187 Ark. 416, 60 S.W.2d 176 (1933); *see also Haering Oil Co.* v. *Beasley*, 221 Ark. 607, 254 S.W.2d 951 (1924) (where Haering and Beasley mutually agreed to terms to end their original contract before its termination date).

In the present case, Fisher and Hill never entered into an agreement to modify or rescind their original contract — either before or after the contract was performed. At one juncture, both parties had sought the rescission remedy, but never came close to arriving at an agreement to resolve their differences. Certainly, Hill never agreed that Fisher was entitled to rescission as was alleged and argued below, and argues now on appeal that the chancellor was correct in denying Fisher's claim for rescission. Suffice it to say, the rules set out above in *Herrick* and *Afflick* are intended to cover those situations where the parties mutually agree to rescind their original agreement — a situation that never occurred between Fisher and Hill.

Fisher also relies on the case of *Stanford* v. *Smith*, 163 Ark. 583, 260 S.W. 435 (1924), when generally arguing that the chancellor was not precluded from awarding the remedy of rescission. In that case, Stanford had filed suit to rescind an exchange of property for fraud. Fisher offers no fraud argument on appeal, nor did the chancellor find any fraud on either the part of Hill or Fisher. Another important distinction is that the court in *Stanford* was able to adjust the inequities so as to award the remedy that Stanford (the injured party) sought and to place Smith, the wrongdoer, in status quo. Again, as discussed previously, the chancellor here simply found it impossible to restore the parties to status quo.

Finally, we turn to Hill's argument that the chancellor erred in finding Hill had failed to meet his burden of proof on his counterclaims for tort of interference, breach of contract and fraud. None of Hill's claims have merit.

First, we have reviewed the record, and cannot find where Hill had the chancellor consider and rule on the tort of interference issue. While such a claim appears to have little merit for other reasons, we simply do not address it because it is an issue raised for the first time on appeal.

Next, Hill contends Fisher breached the parties' February

28, 1986 dealership sale contract which included the property upon which Fisher's business was situated. Apparently, Fisher and Hill signed their February 28, 1986 contract, agreeing the deeds conveying the business property would be placed in escrow. On the same day, Fisher's two sons executed deeds to the property in Fisher's name and these deeds were then held by Fisher's attorney and not filed for record until Hill later breached the parties' contract and vacated the business premises. Hill claims Fisher placed deeds in escrow which never conveyed title to the land and, by doing so, breached the parties' contract, resulting in damages to Hill. We disagree.

The record reflects the parties' sale agreement provided the deeds to the property would not be transferred until the contract was paid in full, and Hill knew the title to the subject property would remain in Fisher's name, pending completion of the contract. Hill's assertions that Fisher's action concerning the deeds was a material breach of the parties' contract or that such action constituted fraud is not supported by our reading of the record. Thus, we agree with the chancellor's dismissal of Hill's counterclaim and third party complaints.

For the reasons presented above, we affirm the trial court in each of its decisions.

Special Justice ROBERT S. LINDSEY dissents in part. NEWBERN, J., not participating.

ROBERT S. LINDSEY, Special Justice. I concur in the denial of specific performance (E-89-1592). It is only in denying rescission that I would reverse and remand (E-89-1524).

The Chancellor was of the opinion that Fisher had not met the burden of proof so as to entitle him to restitution, and concluded that the circumstances had been so altered by part execution that the parties could not even be closely restored to status quo so that it was impossible to grant rescission.

As a general rule, restoration of the status quo is a prerequisite to rescission. Absolute and literal restoration is not required, but only such restoration as is reasonably possible in accordance with equitable principles. *Stanford v. Smith*, 163 Ark. 583, 260 S.W. 435 (1924).

The Chancellor noted that both parties asked for rescission. Two other filings pinpoint an agreement to rescind. In a motion filed January 9, 1990, Hill included:

> 3.3 Plaintiff has requested rescission. . . .
>
> 4.   Plaintiff and defendants concur that rescission is an appropriate remedy. It is therefore appropriate for the court to enter its order granting rescission at the request of both parties.

In a response filed January 11, 1990, Fisher included:

> Respondents concur that the court should order rescission of the contract relating to the sale of the Mercedes-Benz - dealership in Fayetteville, Arkansas, . . .

A Restatement comment makes a distinction between an "agreement of rescission" and the exercising of a right of rescission. Restatement (Second) of Contracts § 283 (1981). Arkansas cases recognize this distinction.

In Arkansas, by mutual consent, the parties to a contract may rescind it in whole or in part. In *Elkins* v. *Aliceville*, 170 Ark. 195, 279 S.W. 379 (1926), we said:

> It is well settled that the parties to a contract may at any time rescind it in whole or in part by mutual consent, . . .

*Id.* at 200.

In *Afflick* v. *Lambert*, 187 Ark. 416, 60 S.W.2d 176 (1933), we said:

> It is therefore a well settled rule of this Court that any parties who can make a contract can rescind or modify it by mutual consent. . . .

*Id.* at 418.

It is urged that these cases only encompass situations where the parties mutually agreed to rescind before any performance, and that the principle is not applicable here. This court, however, quoting the rescission language from both *Elkins* and *Afflick*, said that a contract was terminated in midterm by mutual consent in *Haering Oil Co.* v. *Beasley*, 221 Ark. 607, 254 S.W.2d 951 (1953). Haering was a bulk sales agent for petroleum

products and furnished equipment such as hydraulic lifts, tanks, pumps and air compressors. Beasley owned a filling station and contracted with Haering to sell his petroleum products for one year from September 1, 1947, to August 31, 1948, and thereafter from year to year, subject to termination at the end of any year upon 30 days notice. In February 1949, Beasley notified Haering that he was going to purchase his petroleum products from Lion Oil Company and asked Haering to invoice the equipment which was at Beasley's to Lion Oil Company. Haering contended that Beasley could not terminate the contract until August 31 of any year and sought damages for breach of contract. The court said that the contract was terminated by mutual consent when Haering, in accordance with Beasley's request, sold the equipment to Lion Oil Company and stopped selling petroleum products to Beasley.

Cases that apply the principle that restitution must be substantially in toto recognize a "mutual consent" exception. In *Herrick* v. *Robinson*, 267 Ark. 576, 595 S.W.2d 637 (1980), a seller of assets sued the buyer for the balance due. The buyer's counterclaim included an allegation that the contract had been rescinded. The court denied rescission on the ground that the attempt to rescind was not timely. It was also argued that the buyer had never made an offer of restoration. We said:

> A contract cannot be rescinded, *except by mutual consent*, where the circumstances have been so altered by part execution, that the parties cannot be put in statu quo.

*Id.*, 267 Ark. at 588 (emphasis supplied).

In *Bellows* v. *Cheek*, 20 Ark. 424 (1859), we said:

> A contract cannot be rescinded *without mutual consent*, when circumstances have been so altered, by part execution, that the parties cannot be put in statu quo; for if it is to be rescinded at all, it must be rescinded in toto. (Emphasis supplied)

Similar language from this court is in *Desha's Exrs.* v. *Robinson, Admr.*, 17 Ark. 228, 238 (1856).

While *Stanford* v. *Smith* recognized that generally rescission called for restoration of the status quo, it also pointed out that

if full restoration were not possible, the court could proceed with partial restoration and adjust the equities.[1] A one-half interest in a mercantile business in Dumas was a problem. Stanford owned a house and the one-half interest. Smith owned forty acres of land in Texas. A trade was made but when Stanford arrived in Texas, he found the Texas property not as represented. This court held that rescission was in order even though it could not reestablish the mercantile partnership.

> The mercantile business was operated as a partnership, and that partnership was, of course, dissolved by the sale of Stanford's interest therein. We cannot re-establish this partnership, but we can charge Smith with the value of the property which he received, after giving him credit for the debts against it which he assumed.

The one-half interest in the mercantile partnership could not be and was not restored but, nevertheless, the Court ordered rescission and adjusted the equities. Equity will not decline to grant aid "merely because circumstances intervening since the occurrence of the transaction complained of may render it difficult to restore the parties exactly to their original situations," citing 4 R.C.L. p. 511. I similarly view the Mercedes-Benz franchise.

Although there may be a technical differentiation of a rescission by "mutual consent" before performance, there are forceful reasons for giving effect to separate and joint requests from the parties for equitable rescission. This is particularly so when the parties seem to agree as to what will be adequate compliance with the status quo restoration requirement. Each appears to be suggesting, in general, that Fisher would get return of physical assets still in existence; Hill would be given credit for the $1,270,902.44 paid by him through the escrow accounts; and Fisher would offset the fair rental value of the assets in the enterprise during the period of Hill's operation. Fisher's counsel urged that the parties could be placed in status quo "by the Court's giving appellee Hill credit for 'monies paid' and giving

---

[1] This case also stands for the general rule that if there cannot be restoration, a party "is remitted to action for damages." Here, damages were sought but there is no reference to nor discussion of the damage claim in light of the denial of the rescission claim.

appellant Fisher an offset for the 'fair rental value.' "

Hill's testimony was abstracted in this manner:

> If this contract were to be rescinded and both parties restored to their position before execution on February 28, 1986, that would be fine with me. I would get my million dollars back and pay the Fishers for the fair market value and rent for their property for 3 ½ years, or whatever the time is that I had the property.

Obviously, the Mercedes-Benz franchise is out of the picture, whether there is or is not rescission.

One annotator has written:

> The object of the rule [restoration of status quo] is theoretically to place the parties in statu quo; but the rule is equitable, not technical, and does not require more than that such restoration be made as is reasonably possible and such as the merits of the case demand.

17A Am. Jur. 2d *Contracts* § 592 (1991).

Again:

> In the event restoration of the status quo is impossible, restoration may be granted if the court can balance the equities and fashion an appropriate remedy that would do equity to both parties and afford complete relief.

17A Am. Jur. 2d *Contracts* § 597 (1991).

If this is a matter of rescission by "mutual consent," then it was within the rights of the contracting parties. If there were only requests by both parties for rescission, then under the equitable principles and guidelines established by the courts, restoration of the status quo was not so impossible as to preclude giving effect to what was agreed.

Accordingly, I would reverse and remand E-89-1524 for further proceedings consistent with this opinion.