J.D. FISHER *v.* Gerald JONES, Jones Olds-GMC-Buick, Inc., Mercedes-Benz of North America, Inc. and Mercedes-Benz Credit Corporation

92-763                                        844 S.W.2d 954

Supreme Court of Arkansas
Opinion delivered January 19, 1993
[Rehearing denied February 22, 1993.*]

---

*Newbern, J., not participating.

452

*Raymond C. Smith, P.A.,* for appellant.

*Davis, Cox & Wright,* by: *Wm. Jackson Butt II* and *Tim E. Howell,* for appellee Mercedes-Benz Credit Corp.

*Ball & Mourton,* by: *E.J. Ball* and *Andy E. Adams,* for appellee Gerald Jones and Jones Olds-GMC-Buick, Inc.

ROBERT H. DUDLEY, Justice. The plaintiff, J.D. Fisher, filed

a multi-count suit in chancery court against ten defendants. The chancellor transferred to circuit court the counts that sought remedies at law. Those law counts were against four of the defendants and are the counts involved in this appeal. The chancellor tried the equitable counts against the other six defendants and, after a trial on the merits, ruled in favor of those defendants. The plaintiff appealed, and we affirmed. *Fisher* v. *Jones*, 306 Ark. 577, 816 S.W.2d 865 (1991). Subsequently, the four defendants with counts remaining against them in circuit court filed motions for summary judgment. The circuit court granted the motions, and the plaintiff appeals. We affirm, mainly because the primary issue is precluded by the prior holding.

J.D. Fisher, the plaintiff-appellant, was one of three principal owners of Fisher Buick, Inc., which held the Mercedes Benz franchise in Fayetteville for several years before February 26, 1986. On that date, Fisher Buick entered into a contract to sell the dealership to Kelly Hill and others with the consideration to be paid in monthly installments. The contract restricted Hill from reselling the franchise or the other property without the prior approval of Fisher Buick, and further gave Fisher Buick the right of first refusal to repurchase the franchise and other assets. It also provided that Mercedes Benz of North America (MBNA) had to approve any sale of the dealership made before the purchase price was paid in full. A copy of the contract was provided to MBNA's agents in its Houston, Texas zone office. An agent for MBNA, at its Houston office, told plaintiff that he saw no reason why the franchise would not be re-awarded to plaintiff if Hill went out of business. However, the agents at the Houston zone office did not have authority to bind MBNA to a contractual agreement for the granting of a franchise, and plaintiff knew they had no such authority.

In May 1986, Hill was awarded the Mercedes Benz franchise in Fayetteville. At that same time, Fisher Buick dissolved its corporate charter.

Hill financed his inventory of Mercedes Benz automobiles through the Mercedes Benz Credit Corporation (MBCC). Hill, who apparently was undercapitalized, sold automobiles but failed to reimburse MBCC. By the end of October 1989, Hill had closed the dealership and vacated the premises. MBNA terminated the

franchise in November 1989.

In October 1989, defendant Gerald Jones saw that the Mercedes Benz dealership had gone out of business and called MBNA to see about obtaining the franchise. MBNA advised Jones that he needed to contact Hill. Jones did so and began negotiating with Hill in the latter part of October 1989. The negotiations resulted in the execution of a franchise sales agreement between Hill and Jones Olds-GMC-Buick, Inc., dated October 28, 1989. The agreement was supplemented on November 3, 1989, to address a settlement of Hill's debts to MBNA and MBCC. Hill neither informed plaintiff of the pending sale nor offered him first refusal.

Plaintiff learned of the pending sale and, on October 31, filed two suits in the Chancery Court of Washington County. The first was against Kelly Hill, Thelma Hill, Hill Investment Co., Hill Motor Cars, Inc., Hill Motor Cars II, Inc., and McIlroy Bank and Trust Company, the escrow agent-bank into which Hill was supposed to make the monthly installment payments. The second complaint was against Gerald Jones, Jones Olds-GMC-Buick, MBNA, and MBCC. The two chancery court suits were consolidated, but the law counts, which were contained in the second complaint and form the basis of this appeal, were transferred to circuit court. The chancellor heard the equitable counts and ruled in favor of the defendants remaining in chancery court. The plaintiff appealed, and we affirmed. *Fisher v. Jones*, 306 Ark. 577, 816 S.W.2d 865 (1991). Following the affirmance of the chancery case, the circuit court counts remained pending against four of the defendants. Those four defendants filed motions for summary judgments. The circuit court granted summary judgment in favor of each of the defendants, and the plaintiff appeals. We affirm.

The first assignment of error involves the summary judgment in favor of Gerald Jones and Jones Olds-GMC-Buick. The plaintiff alleged that Jones and Jones Olds-GMC-Buick tortiously interfered with his contractual relations or business expectancy. The circuit court ruled that there were no genuine issues of material fact involving two of the elements of this tort. That ruling was eminently correct.

■ In *Walt Bennett Ford* v. *Pulaski County Special*

*School District*, 274 Ark. 208, 214, 624 S.W.2d 426, 429 (1981), we set out the elements of the tort as follows:

> The basic elements going into the prima facie establishment of the tort are (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.

Plaintiff could not establish that a material issue of fact existed about element one above; that is, plaintiff could not show that there was a material dispute about the existence of a valid contract. He was prevented from doing so by the doctrine of collateral estoppel, or issue preclusion, because, in the first appeal, we affirmed the chancellors' ruling that plaintiff did not have a contract with MBNA to re-award him the franchise. *Fisher v. Jones*, 306 Ark. at 582, 816 S.W.2d at 868.

■■ Collateral estoppel, or issue preclusion, requires four elements before a determination is conclusive in a subsequent proceeding: (1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) that issue must have been actually litigated; (3) it must have been determined by a valid and final judgment; and (4) the determination must have been essential to the judgment. *East Texas Motor Freight Lines, Inc. v. Freeman*, 289 Ark. 539, 543, 713 S.W.2d 456, 459 (1986). All four elements are met in this case, and, since we previously held that there was no contract with MBNA, the issue is precluded from being relitigated.

■ While the claim of tortious interference with a contractual relationship is claim precluded by collateral estoppel, the claim of tortious interference with a business expectancy might not be so precluded. However, we need not decide whether the business expectancy was certain enough to give rise to such a cause of action in this case, because, even if it were, the plaintiff could not show any dispute of material fact involving element two, or knowledge of the expectancy of business on the part of the interferer. Jones attached an affidavit to his motion for summary judgment in which he stated that he had no knowledge of the 1986

agreement between Hill and plaintiff before he entered the contract with Hill on October 28, 1991. Plaintiff did not counter Jones affidavit in any manner. Other evidence corroborates Jones's statement. Plaintiff only showed that on October 31, 1989, plaintiff's attorney sent a letter to Jones. This was after the date of the contract, and the contents of the attorney's letter were not disclosed. Jones testified that he received the letter from plaintiff's counsel before he executed an addendum on November 3, 1989, but he testified that the contract between Hill and himself was complete and that the addendum was related to negotiations conducted with MBCC and MBNA on October 30, 1989, which, again, was before he was aware of a possible business expectancy on the part of plaintiff. In sum, plaintiff did not show any dispute of material fact involving defendant Jones's lack of knowledge that he was interfering with plaintiff's reasonable expectation of a business relationship. Accordingly, the trial court correctly granted summary judgment in favor of defendant Jones.

■■ The plaintiff argues that collateral estoppel should not be applied, and the issue of tortious interference should not be precluded because Jones was not a party to the first appeal. At one time, mutuality was a requirement of res judicata or claim preclusion, and also of collateral estoppel or issue preclusion. *See, e.g., Restatement of Judgments* § 93 (1942); *see also Bigelow* v. *Old Dominion Copper Co.*, 225 U.S. 111 (1911). While still a requirement of res judicata, the requirement of mutuality has been abandoned by most jurisdictions for collateral estoppel. 18 Charles Wright, Arthur Miller & Edward Cooper, *Federal Practice and Procedure* § 4464 (1981); Stuart Johnson, Note, *North Carolina Abandons the Mutuality Requirement for Defensive Collateral Estoppel*, 66 N.C. L. Rev. 801 (1988). The case at bar deals with the defensive use of collateral estoppel. The U.S. Supreme Court first approved the defensive use of collateral estoppel in *Blonder-Tongue Laboratories* v. *University of Illinois Foundation*, 402 U.S. 313 (1971). While the offensive use of collateral estoppel has also been approved, it is more controversial, and not at issue in this case. (The Supreme Court approved the offensive use of collateral estoppel in *Parklane Hosiery Co.* v. *Shore*, 439 U.S. 322 (1979)). Other state supreme courts have abandoned the mutuality requirement for the defensive use of

collateral estoppel. *See, e.g., Silva* v. *State*, 745 P.2d 380 (N.M. 1987); *Thomas M. McInnis & Assocs., Inc.* v. *Hall*, 349 S.E.2d 552 (N.C. 1986); *Black Hills Jewelry Mfg. Co.* v. *Felco Jewel Indus.*, 336 N.W.2d 153 (S.D. 1983). In the present case, plaintiff chose to file his case against all of the defendants in chancery court and requested that the legal counts against four of the parties be transferred to circuit court, which they were. The chancery case was fully litigated and involved some of the same issues in the circuit court counts. We have no hesitancy in holding that mutuality of parties or privity in the chancery case and its appeal is not required for the defensive use of collateral estoppel in the circuit court case.

The next assignment of error involves the summary judgment in favor of MBNA. Plaintiff pleaded MBNA was liable for damages for breach of contract. A part of our holding in the first appeal was concerned with this claim: "In sum, we hold the evidence supports the chancellor's decision that no express or implied contract existed and therefore no judgment against MBNA for specific performance could be granted." *Fisher* v. *Jones*, 306 Ark. at 582, 816 S.W.2d at 868. The trial court held that plaintiff's claim of MBNA's breach of contract was barred by the doctrine of res judicata.

In *Bailey* v. *Harris Brake Fire Protection District*, 287 Ark. 268, 269, 697 S.W.2d 916, 917 (1985), we set out the elements of res judicata as follows:

> (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based upon proper jurisdiction; (3) the first suit was fully contested in good faith; (4) both suits involve the same claim or cause of action; and (5) both suits involve the same parties or their privies.

All of the elements are met with regard to plaintiff's breach of contract claim, and the chancellor was thus correct in concluding this claim was barred by res judicata.

Plaintiff also pleaded that MBNA was also liable for tortious interference with contractual relations. No mention of interference with business expectancy is made in this assignment. Initially, since MBNA is one of the parties to the alleged contract with plaintiff, it is difficult to understand how MBNA could be

the interferer in the contract. In the chancery suit, the chancellor ruled that the plaintiff failed to meet his burden of proving the existence of a contract requiring MBNA to re-award the franchise to him. The chancellor additionally found that MBNA agents in the Houston office lacked the authority to bind MBNA to such a contract and that plaintiff was aware of this lack of authority. In affirming the chancellor we held the evidence supported the chancellor's decision that no express or implied contract existed between plaintiff and MBNA. That issue was precluded from further litigation in the counts that remained in circuit court. Thus, plaintiff was precluded from establishing the first element of the tort of interference with contractual relations.

Plaintiff's final assignment of error is that the trial court erred in granting summary judgment in favor of MBCC because there are material facts in dispute involving his claim that it tortiously interfered with his right of first refusal in his contract with Hill. MBCC repossessed the car inventory from the dealership for resale in a commercially reasonable manner. The trial court ruled that even if MBCC had somehow interfered with plaintiff's right of first refusal with Hill, plaintiff could not prove any damages because MBNA was under no contractual obligation to re-award its franchise to plaintiff, and the trial court also ruled that because Hill owed MBCC about $600,000.00, MBCC had a right to lawfully protect its interest.

For an interference to be actionable, it must be improper. *Walt Bennett Ford* v. *Pulaski County Special Sch. Dist.*, 274 Ark. 208, 214-A, 624 S.W.2d 426, 429 (1981) (supplemental opinion on denial of rehearing). The *Restatement (Second) of Torts* sets out the factors in determining when interference is improper as follows:

> *Factors in Determining Whether Interference is Improper.*
>
> In determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation of another is improper or not, consideration is given to the following factors:
>
> (a) the nature of the actor's conduct;

(b) the actor's motive;

(c) the interests of the other with which the actor's conduct interferes;

(d) the interests sought to be advanced by the actor;

(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other;

(f) the proximity or remoteness of the actor's conduct to the interference; and

(g) the relations between the parties.

*Restatement (Second) of Torts* § 767 (1979). The trial court also considered section 769 of the *Restatement*, which provides:

> *Actor Having Financial Interest in Business of Person Induced*
>
> One who, having a financial interest in the business of a third person intentionally causes that person not to enter into a prospective contractual relation with another, does not interfere improperly with the other's relation if he
>
> (a) does not employ wrongful means and
>
> (b) acts to protect his interest from being prejudiced by the relation.

As a second ground of the summary judgment in favor of MBCC, the trial court considered MBCC's financial interest in the business and correctly concluded that there simply was no proof of an improper interference by MBCC.

Affirmed.

NEWBERN, J., not participating.