558

In re George F. BALDWIN, Jr., and Marie Louise Baldwin, Debtors.

Daniel K. SCHIEFFLER, Trustee, Plaintiff,

v.

Mike PRYOR, and Linnette Pryor, Defendants,

Mike Pryor, Linnette Pryor and CCAT, Inc., Counterclaimants and Third Party Plaintiffs,

Daniel K. Schieffler, Individually and George F. Baldwin, Jr., and Marie Baldwin, Individually, Counterdefendants and Third Party Defendants.

Bankruptcy No. 91–30647M.
Adv. No. 93–3015M.

United States Bankruptcy Court,
E.D. Arkansas,
Jonesboro Division.

April 12, 1995.

| | |
|---|---|
| $5,000.00 | July 1, 1991 |
| $7,500.00 | July 1, 1992 |
| $7,500.00 | July 1, 1993 |
| $7,500.00 | July 1, 1996 |
| $7,500.00 | July 1, 1997 |
| $7,500.00 | July 1, 1998 |
| $7,500.00 | July 1, 1999 |

Schieffler's complaint alleged that the Pryors failed to pay the installment of $7,500.00 due on July 1, 1992, and Schieffler therefore, sought judgment for $7,500.00, plus interest and attorney's fees from the Pryors.

The Pryors filed several responsive pleadings culminating in a pleading styled "Amended Counterclaim and Third Party Complaint." The counterclaim sought relief against Schieffler as trustee and individually. The allegations against Schieffler are summarized as follows: That the contract of sale included a lease of certain real property owned by the Debtors (presumably the real property upon which the abstract business was conducted), which expired at the end of 1993. That pursuant to the lease agreement the Debtors would maintain the "building at 415 Union Avenue, Jonesboro, Arkansas" in a reasonable state of repair and that the Debtors warranted good title and quiet and peaceful possession to the premises. The counterclaim alleges that the Debtors and their successor, the trustee, have failed and refused to maintain the building in good condition, and have failed to clean the common areas. The counterclaim also alleges that the Debtors and their successor, the trustee, have "breached the terms of the lease agreement providing for peaceable and quiet enjoyment of the demised premises."

More specifically, the counterclaim asserts that the Debtors and the trustee violated the covenant of peaceful and quiet enjoyment by "the fact that there was continuing interruption caused by prospective buyers" and that the Debtors and the trustee failed to pay over "the monies which had been collected from the lease benefits to the secured creditor [sic]." The counterclaim further alleged:

> Said Daniel K. Schieffler and George F. Baldwin, Jr. and Marie Baldwin failed to pay the real estate taxes on the premises and allowed them to go delinquent, and even allowed the secured creditor to take action because of their failure and refusal

William C. Ayers, West Memphis, AR, for Daniel K. Schieffler, Trustee.

Keith Blackman, Jonesboro, AR, for CCAT, Inc., and Linette and Mike Pryor.

Daniel K. Schieffler, West Helena, AR, Trustee.

Warren E. Dupwe, Jonesboro, AR, for Marie Louise Baldwin.

Charles M. Mooney, Sr., Jonesboro, AR, for Robert Langford.

### ORDER

JAMES G. MIXON, Chief Judge.

On October 16, 1991, George F. and Marie Louise Baldwin (Debtors) filed a voluntary petition for relief under the provisions of Chapter 11 of the United States Bankruptcy Code. Daniel K. Schieffler (Schieffler) was appointed Chapter 11 trustee on February 6, 1992, and on July 15, 1994, the case was converted to Chapter 7 and Schieffler continued as trustee.

On March 23, 1993, Schieffler filed an adversary proceeding against Mike Pryor and Linnette Pryor (the Pryors). Schieffler's complaint alleged in substance as follows: That in 1988 the Debtors and the Pryors entered into an agreement for the sale of a land title abstracting business owned by the Debtors for the sum of $115,000.00, payable at closing. As part of the contract, the Debtors agreed not to compete with the Pryors in the operation of an abstract or title business for an initial term of eighteen months. The contract further provided that the covenant not to compete would thereafter be renewed through June 20, 2000, by payments as follows:

to pay on the indebtedness owed to said secured creditor, which affected the rights of the defendants to continued possession and use of the premises. In order to preserve said right to continued use and possession, among other things, these defendants were thereby required to pay a premium upon the premises to purchase same to preserve said rights. Said actions amounted to a breach of the right to peaceful and quiet enjoyment which had been warranted to the defendants by debtors and subsequently, in lieu thereof, by Daniel K. Schieffler, Trustee.... [W]hen the trustee took over, he made multiple threats of eviction and legal action, among other acts, seeking to collect additional rental sums for the use of said second floor area, without any concession or attempts to correct the defaults and the failure of the debtors to clean the premises or maintain same.

5. Said Daniel K. Schieffler acted both in his official capacity and outside his official capacity when an initial contract for sale was executed by the parties herein being Mike and Linnette Pryor, with said Daniel K. Schieffler, Trustee, offering to purchase said property. Said offer was accepted by Daniel K. Schieffler as trustee and the Court was petitioned by him for approval of same. After the contract was executed, said Daniel K. Schieffler, both as trustee and individually, as these acts may well have been and should be considered to be outside the realm of his official duties and authority, then actively solicited other individuals in a tortious manner to increase the offers over and above that made by the Pryors which had already been accepted, advising that he would then present the new offers. This amounted to a tortious interference with the defendants' contract, so that both Daniel K. Schieffler, as trustee and individually, should be held liable for damages, both nominal and actual, for said actions.

6. Additionally, the debtors, George F. Baldwin, Jr. and Marie Baldwin also further violated the provisions of their agreement not to compete under the contract between the parties, in that George F. Baldwin, Jr. communicated directly with and solicited from a direct competitor of the defendants' business to attempt to, and did obtain, an offer which, among other things, required the ouster of the defendants' from the building as a part of the acceptance of the offer. It was then tendered by said Daniel K. Schieffler, Trustee, as a bona fide offer to the defendants in an attempt to require them to meet the offer or lose their right of first refusal. The offer on its face is not reasonable, not in good faith and was a wrongful attempt to force the defendants to increase their offer or lose their tenancy and market position.

7. Said George F. Baldwin, Jr. directly solicited this unreasonable offer and supplied it to said Daniel K. Schieffler, who, individually and as trustee, provided same to the Pryors. Daniel K. Schieffler, Trustee, was purporting to act as the trustee and in the position of the debtors in his actions. Said actions required the defendants to incur attorney's fees and costs in dealing with said matters, and caused them substantial concern, worry and loss of time as a result of having to deal with these matters. Said actions by the trustee and Baldwin were clearly taken only for the purpose of attempting to extract additional monies from the defendants without legal basis or justification. These actions were taken with a clear intent to effectively extort funds from the defendants and to bring improper pressures to bear contrary to the contract provisions, as such offers posed by a direct competitor clearly required the defendants to be removed from the premises. This was in direct competition to their ongoing business at that location, thereby causing substantial loss and disruption if it occurred. The intent was tortious and the actions intentional, along with those of said Daniel K. Schieffler when he acted in attempting to interfere with the offer and acceptance which had been previously executed so that these counterclaimants and cross-complainants should have substantial judgment against all defendants, or such of them as the Court deems reasonable and proper for all damages.

Schieffler, as trustee and individually, filed a motion to dismiss the counterclaim pursuant Fed.R.Bankr.P. 7012. Schieffler argues in his brief in support of his motion that the counterclaim does not allege any facts to constitute a cause of action against Schieffler as trustee or individually. Schieffler also argued at oral argument that, as a bankruptcy trustee, he has derived immunity for his actions.[1]

## DISCUSSION

■ For purposes of a motion to dismiss for failure to state a cause of action under Fed.R.Civ.P. 12(b)(6), the factual allegations of the complaint are presumed to be established and all reasonable inferences are made in favor of the nonmoving party. *Harrison v. Springdale Water & Sewer Comm'n,* 780 F.2d 1422, 1425–26 (8th Cir.1986).

■ A motion to dismiss under Fed. R.Civ.P. 12(b)(6) requires the Court to consider only the pleadings actually filed, although all reasonable inferences from the facts alleged must be liberally construed in favor of the party against whom the motion is made. *Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir.1984). It is not proper, however, to assume the moving party can prove facts that have not been alleged. *Campbell v. Wells Fargo Bank, N.A.,* 781 F.2d 440, 443 (5th Cir.), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

■ Construing the allegations in the light most favorable to the Pryors, the Pryors allege that the estate had continuing obligations to perform under a lease of real property of the estate, which the trustee failed to perform resulting in damages to the Pryors. This allegation is sufficiently clear to allege a claim against the estate and the motion to dismiss is denied as to this allegation.

■ The counterclaim also alleges that Schieffler, as trustee and individually, tortiously interfered with a contractual business relationship between the Debtors and the Pryors. The counterclaim alleges that Schieffler, after agreeing to sell real property of the estate to the Pryors, was apparently furnished a higher offer from some unnamed third party, an alleged competitor of the Pryors. The counterclaim asserts that the Debtors, who procured the offer, and Schieffler "provided" the offer to the Pryors.

The counterclaim does not specifically allege if the offer was approved by the Court or whether a sale was consummated.[2] The substance of the allegations is apparently that Schieffler's actions in considering a higher offer for the purchase of the real property constituted tortious interference with the Pryors' business and caused the Pryors "to incur attorney's fees ... and caused them substantial concern, worry and loss of time." The counterclaim concludes that the Debtors, the estate, and the trustee, individually, are guilty of the tort of intentional and malicious interference with the contractual relationship and should respond in damages.

■ Arkansas recognizes the well-established principle of the tort of intentional and malicious interference with the business relationship of another. *Mason v. Funderburk,* 247 Ark. 521, 446 S.W.2d 543 (1969). The Arkansas Supreme Court in *Mason v. Funderburk* quoted with approval from the Restatement of Torts as follows:

> The basic elements going into a prima facie establishment of the tort are (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party

---

1. Schieffler and the Pryors devoted a substantial amount of time arguing the issue of immunity; however, in view of the failure of the counterclaim to state a cause of action against Schieffler, individually, it is not necessary to determine the issue of immunity.

2. The counterclaim did contain an allegation that implies that a sale occurred. This allegation is that, "In order to preserve said right to continued use and possession, among other things, these defendants were thereby required to pay a premium upon said premises to purchase same to preserve said rights."

whose relationship or expectancy has been disrupted.

*Mason,* 247 Ark. at 527, 446 S.W.2d at 547. *Fisher v. Jones,* 311 Ark. 450, 455, 844 S.W.2d 954, 957 (1993). However, merely concluding, as this counterclaim does, that evidence of Schieffler's efforts to sell property of the estate is tortious interference does not make it so.

A trustee appointed under 11 U.S.C. § 701 (1988) is the official representative of the estate and has certain duties imposed by the bankruptcy code. 11 U.S.C. § 704 (1988). Among the trustee's duties is the duty to "collect and reduce to money the property of the estate for which such trustee serves." 11 U.S.C. § 704(1) (1988). Property of the estate is defined as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (1988).

The allegations in the counterclaim concern two separate contracts. One contract, which existed prepetition, concerns a provision not to compete. The second contract is alleged to exist between Schieffler and the Pryors for the sale of real property during the pendency of the bankruptcy case.

Schieffler, as trustee, succeeded to whatever benefits and obligations the alleged existing contract imposed on the Debtors. The cause of action of intentional and malicious interference with a business relationship requires that the tortious act be by a third party acting without legal justification or privilege. *Mason v. Funderburk,* 247 Ark. at 527, 446 S.W.2d at 546. Here, Schieffler is not a third party, but is the successor in interest of the Debtors and is not only justified and privileged to act, but is required to act. 11 U.S.C. § 704 (1988). Therefore, the counterclaim does not allege the elements necessary for a prima facie establishment of a cause of action for tortious interference with a business relationship of another.

The second contract between Schieffler and the Pryors is not alleged to have been interfered with by a third party; therefore, no cause of action for tortious interference with a business relationship of another has been alleged.

Therefore, for the foregoing reasons, the motion to dismiss the allegations in the counterclaim against Schieffler, as trustee and individually, regarding tortious interference with a contract are dismissed. Since there are no other allegations against the trustee individually, the entire counterclaim as to the trustee, individually, is dismissed.

Trial on the merits of the remaining allegations against the Debtors and the estate will be set by subsequent notice.

IT IS SO ORDERED.