Evelyn R. GREEN et al *v.* Mac CARDER, et al

84-53                                                667 S.W.2d 660

Supreme Court of Arkansas
Opinion delivered April 16, 1984

240

*Jack T. Lassiter,* for appellant.

*Donald R. Bennett,* for appellee.

P. A. HOLLINGSWORTH, Justice. The Alcoholic Beverage Control Board granted the application of Dr. Edward Stewart Allen for retail liquor and off premise beer permits. On appeal, the circuit court upheld the Board's decision. We are being asked to reverse the circuit court and the Board and find that there was not substantial evidence to support the granting of the permit. We affirm.

Dr. Allen's application was denied by the director of the Alcoholic Beverage Control Division. On appeal, the Beverage Control Board unanimously approved the application after conducting a hearing which was attended by fourteen people in opposition. In their decision, the Board cited the following factors:

(1) That the applicant is legally and morally qualified to hold the applied for permit;
(2) That the proposed outlet will not greatly reduce the number of parking spaces available to patrons in the

immediate shopping area;

(3) That maps were introduced at the hearing which show that there are only two other liquor retail outlets in a defined market area and that in the immediate area of Kavanaugh and Cantrell, there is only one other outlet;

(4) That there is evidence contained within the record that the development of the land into a liquor store outlet is desirable as it will be a low vehicle traffic business;

(5) That plans are contained within the file for the proposed outlet;

(6) That no evidence was offered by any of the objectors as to the character of the applicant nor was there any testimony offered that the proposed outlet would be detrimental to other existing liquor outlets.

The trial court upheld the Board's action, finding that the decision was supported by substantial evidence.

The record made before the ABC Board contains the arguments presented by Allen in favor of granting the permit and by the fourteen people in opposition who attended the hearing. Since these are the facts upon which a finding of substantial evidence must be based, we will set them out in pertinent part. The appellee, Dr. Allen, appeared, representing himself and testified as follows:

I had planning consultants come out over a year ago to advise me on the best development of this piece of vacant property. I considered a fast food operation and I considered a retail sporting goods store but because of the area that it is in and the traffic and parking it was his advice, his professional advice, that the lowest traffic production and the lowest parking requirements would be a retail liquor outlet. That's my reason for, it's a pure development situation. . . .

I would like to point out that there is no official objection in the file from any city official. . . . I would like to comment also on the petitions there in the file. . . . Some of those petitions were gathered at the cash register of two opposing retail liquor outlets. . . . I have

outlined the trade area here. This is, this area [which] is bounded by Markham Street to the south, by Cedar Street to the east, and by University Avenue . . . to the west contains approximately 15,000 to 20,000 people. . . . In this area . . . there are presently two outlets. Two retail liquor outlets. . . . So there is an outlet in the neighborhood already. . . . I am going to oversee [the operation of the outlet] to a major degree. This proposed location is three blocks from my house. . . . I hire competent, experienced managers and I am in direct contact. On some of my other businesses on almost a daily basis. . . . [A]s far as the parking is concerned. In the file is a proposed plot plan showing the location of the proposed door on the parking lot. Now the parking lot primarily at this point does not serve parking for the businesses there. It serves as a primary parking for the employees that work in the surrounding businesses. . . . There are present on that thirty-one parking spaces. With the proposed development of this lot there will be twenty-nine parking spaces. So I am proposing to eliminate two parking places.

. . .

All the retail outlets in that area . . . close at 10:00 and that is our intention also.

Sandra Cherry, spokesperson for the opposition, testified as follows:

This opposition is not based on any opposition to alcohol in particular. This opposition is based primarily on the fact that the neighborhood itself and the shopping center itself are inter-related. . . . [T]hese are some of the considerations. . . . The first one is that we feel that its particular location would lower the property value of the area directly behind the proposed location. . . . Secondly, we are most concerned with the fact that Dr. Allen is a practicing physician and he will not be, there is no way that he could adequately supervise and be present sufficiently himself to have control over it. There are other considerations . . . mainly with the parking that is available now. . . . [T]he store that Dr.

Allen is proposing will take up part of only the remaining parking space. . . . The exit from where the store would be located comes in awkwardly into an intersection which is already a difficult area. . . . [F]or the property located behind the proposed store, the proposed permit, the noise level has been high, will be higher with the store and the stores that are there at the present time close early, . . . around six or seven and at this time pose no problem. It will introduce to this particular block another kind of element, a later night element. . . . [T]hat kind of activity will now be more disturbing to these people who live behind that area who have always been able to anticipate that it will be a quiet area for them to be.

These people are concerned with their neighborhood. They . . . may be a group that is just tired of alcohol in particular, . . . but also it is more concern for property values and general nature of the neighborhood. . . . The retail liquor store that he proposes is operating during the day . . . and it is that time that these people are concerned about the parking or the hazardous congested condition in general. It is at that point and time that the children are all out there playing and shopping . . . and that's when they are concerned about the traffic and the parking. . . . [A]lthough Mr. Allen had certain control over it when he says it will not disturb the parking in the general vicinity, it will in a certain sense. He can perhaps control it to a certain degree but what they are saying generally is that the area out here is so limited in the first place.

Other members of the oppostion reiterated the same complaints as those articulated by Ms. Cherry.

At the original hearing before the Director of the ABC Division when the application was rejected, 103 letters were submitted and 229 signatures on petitions were presented. In the hearing before the ABC Board, where the application was approved, eighty-eight signed copies of a short form protest letter; four signed copies of a long form protest letter;

forty-four signatures on a long form petition; and 264 signatures on a short form petition were submitted along with the testimony partially presented *supra*.

The Alcoholic Beverage Control Board is empowered to determine whether public convenience and advantage will be promoted by issuing liquor permits. Ark. Stat. Ann. § 48-301 (Supp. 1983). Ark. Stat. Ann. § 5-713 (Supp. 1979) provides that courts may reverse or modify a decision of an administrative board if the decision is not supported by substantial evidence. *Copeland* v. *Alcoholic Beverage Control Board*, 4 Ark. App. 143, 628 S.W.2d 588 (1982). We do not, however, substitute our judgment for that of an administrative agency, absent an abuse of discretion by that agency. *Copeland, supra*. When reviewing administrative decisions, we review the entire record to determine whether there is any substantial evidence to support the agency's decision, or was there arbitrary and capricious action, or was it characterized by abuse of discretion. *Ark. ABC Bd.* v. *King*, 275 Ark. 308, 629 S.W.2d 288 (1982). In *Gordon* v. *Cummings et al*, 262 Ark. 737, 561 S.W.2d 285 (1978) we held:

> It is well settled that administrative agencies are better equipped than courts, by specialization, insight through experience and more flexible procedures to determine and analyze underlying legal issues; and this may be especially true where such issues may be wrought up in a contest between opposing forces in a highly charged atmosphere. This recognition has been asserted, as perhaps, the principal basis for the limited scope of judicial review of administrative action and the refusal of the court to substitute its judgment and discretion for that of the administrative agency.

In examining similar cases, we have held that "[t]he number or official position of persons who object to or support the issuance of retail liquor permits is of no significance under the statute. The reasons those persons oppose or support specific permit applications may be very significant." *Snyder* v. *ABC Bd.*, 1 Ark. App. 92, 613 S.W.2d 126 (1981). In *ABC Board* v. *Blevins*, 5 Ark. App. 107, 633 S.W.2d 380

(1982), the Court of Appeals upheld the board's granting of a permit, stating:

> Most of appellees' proof dealt with the general lack of need for another liquor store, the danger and hazards it might produce, the inability of law enforcement to police the area and the reduction of the value of surrounding property. The Board had before it all of this evidence, as well as that provided by White. Much of the evidence was in conflict and required the Board to weigh and decide which testimony and proof it chose to believe. In considering all the evidence, we conclude the Board had sufficient proof upon which to base its decision to grant White a permit. If we were to hold otherwise, we would doubtless be substituting our judgment for that of the Board, an exercise in discretion we are clearly not afforded under the rule established in *Gordon* v. *Cummings, supra.* This, even though we may have reached a different decision than that rendered by the Board, it was the Board's decision to make and not ours.

The burden was upon the appellant to demonstrate that the proof before the administrative tribunal was so nearly undisputed that fairminded men could not reach its conclusion. *Williams* v. *Scott, Director,* 278 Ark. 453, 647 S.W.2d 115 (1983). The question is not whether the testimony would have supported a contrary finding but whether it supports the finding that was made. *Id.* Whenever the record contains affirmative proof supporting the view of each side, we must defer to the Board's expertise and experience. *Fayetteville School Dist. No. 1* v. *ABC Bd., 279 Ark. 89, 648 S.W.2d 804* (1983).

Here, the primary concerns of the parties opposed to the permit were lack of necessity for another liquor store; traffic congestion; general opposition to liquor stores; safety considerations from increased crime and increased traffic; and parking problems. The area where the proposed store would be located is already heavily congested with parking problems and a liquor store already exists a block away. Therefore, it is difficult to see how the addition of this liquor

store will suddenly introduce a dangerous element into the neighborhood. We hold that there was substantial evidence to support the Board's action.

Affirmed.

HAYS, J., not participating.