BEVERLY ENTERPRISES-ARKANSAS, INC. and
Hillsboro Manor Nursing Home, Inc. *v.* ARKANSAS
HEALTH SERVICES COMMISSION, et al.

91-196                                         824 S.W.2d 363

Supreme Court of Arkansas
Opinion delivered February 3, 1992

222

*Rose Law Firm, A Professional Association*, by: *Webb Hubbell*, for appellant Beverly Enter.-Ark., Inc.

*Schackleford, Schackleford, & Phillips, P.A.*, by: *Teresa Wineland*, for appellant Hillsboro Manor.

*Winston Bryant*, Att'y Gen., by: *Susan G. Jones*, Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. This appeal is from a decision of the Health Services Commission ("Commission") granting a permit of approval for the construction of a new 70 bed nursing home in Drew County. In accordance with the Arkansas Administrative Procedures Act, the decision was first appealed to the Commission by separate appellants Beverly Enterprises-Arkansas, Inc. ("Beverly") and Hillsboro Manor Nursing Home, Inc. ("Hillsboro"). The Commission affirmed its prior decision and both appellants appealed to circuit court which affirmed the Commission's decision. Our jurisdiction is pursuant to Ark. Sup. Ct. R. 29(1)(c) as the appeal involves the interpretation of the rules and regulations of an administrative agency. We find no error in the Commission's decision and affirm.

On appeal, Beverly argues the circuit court erred in upholding the Commission's decision to grant a permit of approval for the construction of a new nursing home in Drew County. Separate appellant Hillsboro argues the circuit court erred in

holding both that the Commission properly adopted, interpreted and applied the standards and criteria for review of the permit applications and that the Commission's decision was not arbitrary, capricious, nor an abuse of discretion. Although each appellant makes separate arguments on appeal, their arguments can be characterized as a challenge of the method the Commission used in deciding to grant a permit of approval for a new nursing home in Drew County. A brief discussion of how the Commission reached this decision follows.

In fulfillment of one of its statutory duties stated in Ark. Code Ann. § 20-8-103(b) (Repl. 1991), the Commission determined there was a need for additional nursing home beds in Drew County. The Health Services Agency ("Agency") then issued applications for a permit of approval to construct a new nursing home in Drew County. In accordance with Ark. Code Ann. § 20-8-104(d) (Repl. 1991) and the Commission's Policies and Procedures For Permit of Approval Review, which the Agency is authorized to implement pursuant to Ark. Code Ann. § 20-8-104(b) (Repl. 1991), the Agency reviewed the three applications for the permit it had received. The Agency then issued its written findings and recommendations to the Commission, concluding that appellee Monticello Nursing Home's application should be granted while the applications of both Hillsboro and Drew County Nursing Home (Drew County Nursing Home is not a party to this appeal) should be rejected. The Commission then adopted the Agency's findings and approved Monticello Nursing Home's application.

Beverly, which operates the only existing nursing home in Drew County, appealed the approval of Monticello Nursing Home's application; Hillsboro appealed the rejection of its application. The Commission heard both appeals and affirmed its previous decision. From there, both Beverly and Hillsboro appealed to circuit court where the judge ruled the Commission's "adoption, interpretation and application of the standards and criteria for granting the application of the intervenor, Maxwell [Monticello Nursing Home], was proper" and that the Commission's decision to grant Monticello Nursing Home the permit of approval is supported by substantial evidence and was not "arbitrary, capricious, or characterized by abuse of discretion."

As its only point of error, Beverly asserts the circuit court erred in upholding the Commission's decision to grant a permit of approval for a new nursing home in Drew County because the decision is not supported by substantial evidence and was arbitrary, capricious, and an abuse of discretion. The Commission responds with the argument that its decision is supported by substantial evidence because it was made in accordance with its review criteria.

On review of an agency decision, the circuit court is limited to a review of the evidence to determine whether there was substantial evidence to support the decision made, and on appeal, our review of the evidence is similarly limited. *Arkansas Real Estate Comm'n* v. *Harrison*, 266 Ark. 339, 585 S.W.2d 34 (1979). When reviewing the evidence, we give it its strongest probative force in favor of the agency. *Williams* v. *Scott*, 278 Ark. 453, 647 S.W.2d 115 (1983). In order to establish an absence of substantial evidence, Beverly must show the proof before the Commission was so nearly undisputed that fair-minded persons could not reach its conclusion; the question is not whether the evidence supports a contrary finding, but whether it supports the finding that was made. *Id.*

In an attempt to meet its burden, Beverly asserts the Commission's decision was made through the evaluation of the Commission's four criteria for review of permits, that three of the four criteria were not satisfied by the application which received the Commission's approval, and that because of this failure to satisfy the criteria, the Commission's decision was not supported by substantial evidence and should be reversed.

Beverly is correct in asserting that the permit applications must be reviewed according to the review criteria promulgated by the Commission. Sections 20-8-103(d), —104(b), (d); Section VIII, CRITERIA FOR REVIEW, Health Services Commission Policies and Procedures for permit of Approval Review. The four criteria are stated as follows:

Section VIII. *CRITERIA FOR REVIEW*

A. The Agency and the Commission will utilize the following general criteria in the review process:

a. Whether the proposed project is needed or pro-

jected as necessary to meet the needs of the locale or area;

b.   Whether the project can be adequately staffed and operated when completed;

c.   Whether the proposed project is economically feasible; and

d.   Whether the project will foster cost containment through improved efficiency and productivity.

The Commission concedes it must follow the review criteria it promulgated and answers Beverly's claim with an assertion that, based upon the four review criteria, its decision is supported by substantial evidence. We agree. Thus, provided the Commission follows its procedures and considers its four review criteria, the ultimate decision to grant a permit of approval is a discretionary one for the Commission to make. We will uphold the Commission's exercise of its discretion in reaching this decision if it is supported by substantial evidence and is not arbitrary, capricious, nor an abuse of its discretion. *Williams, supra*; *Partlow* v. *Arkansas State Police Comm'n*, 271 Ark. 351, 609 S.W.2d 23 (1980).

The first of the three criteria Beverly challenges as not being satisfied is the criterion of need. *See* Section VIII. A.a., Health Services Commission Policies and Procedures for Permit of Approval Review. Specifically, Beverly challenges the Commission's application of its population based methodology in determining the need for a new nursing home in Drew County.

To determine the need for nursing home beds in the state the Commission has adopted a "population based methodology" and a "utilization based methodology." The population based methodology provides as follows:

I.   POPULATION BASED METHODOLOGY

A.   This methodology projects nursing home bed need using the 1992 estimated population in four age groups (see below) of a service area (county). This method is based on a study commissioned by the Arkansas Nursing Home Association which estimated the following nursing home bed need by age

group:

| AGE GROUP | BEDS PER 1000 POPULATION |
|---|---|
| Below 65 | 1.53 |
| 65 to 74 | 16.30 |
| 75 to 84 | 59.40 |
| 85 and above | 153.10 |

Note: The projection for a county represents the number of *patients* estimated to need beds. Since all nursing homes cannot be expected to operate at 100% occupancy year round, additional beds are added to the projection to allow for patient fluctuation i.e., the projection represents 95% of the beds needed.

B.  Even if a county is projected as needing additional beds, no beds will be approved unless the county has experienced a 94.5% average occupancy rate during the previous calendar year.

In the present case, the Commission used its population based methodology and concluded there was a "need" for 39 beds in Drew County. The Commission allowed the existing nursing home in Monticello, which is owned by Beverly, to expand to the 140 bed limit by awarding it 16 of the 39 beds. Because the population based methodology indicated there was a need for 39 beds, and because 39 is "at least 35, but less than 70," the Commission went on to apply the next provision of the population based methodology which states that:

C.  In counties where the Population Based Bed Need Formula indicates a need for at least 35, but less than 70, nursing home beds and the existing facilities in the service area cannot utilize more than half of that need without exceeding 140 beds, the Commission may grant a permit of approval for a new 70 bed nursing home.

Beverly asserts that under the above-quoted provision of the population based methodology, because it was awarded 16 beds there is only a "need" for 23 beds, rather than 39 beds, and

therefore the Commission erred in exercising its discretion to grant a permit of approval. Beverly supports this argument with numerous references to the record where the Commission, either in its findings and recommendations or at its hearings, made statements to the effect that "there is a need for 23 additional beds."

The Commission answers Beverly's argument by pointing out that provision C of the population based methodology has two requirements: 1) a need for at least 35 but less than 70 beds, and 2) the existing facilities in the county must be unable to utilize more than half of that need without exceeding the 140 bed limit. The Commission had already determined there was a "need" for 39 beds in Drew County. The Commission had also already determined to award the existing facility in Drew County 16 beds, thereby allowing it to expand to the 140 bed limit. Thus, the Commission argues that the correct application of provision C of the population based methodology to the facts of this case is as follows. Provisions A and B are used to determine a need of 39 beds in Drew County. Provision C is then applied because 39 is "at least 35 but less than 70," and because Beverly's existing facility could only utilize 16 of those 39 beds without exceeding the 140 bed limit. As 16 is less than half of the need of 39, the Commission asserts the second requirement of provision C is satisfied and therefore it had the discretion to grant the permit of approval. The Commission is quick to point out that, had Beverly's existing facility been able to utilize 20 beds without exceeding the 140 bed limit, the Commission would not have had the discretion to grant Monticello Nursing Home the permit of approval.

We agree with the Commission's analysis. Beverly is overlooking the second requirement of provision C and ignoring the semantics of the word "need" as used in the population based methodology. "Need" is determined according to provisions A and B of the methodology. Provision C is then used, when applicable by its own terms, to determine the Commission's discretion to grant permits in limited situations. Provision C is not, as Beverly asserts, used to determine the actual "need" for nursing home beds in a county. Beverly reads the second requirement of provision C as altering the determination of need made pursuant to provisions A and B.

On review of agency decisions, we determine whether an agency's interpretation of its regulations is reasonable; and although not binding on us, an agency's interpretation of its own rules is persuasive. *Sparks Regional Medical Ctr.* v. *Arkansas Dep't of Human Servs.*, 290 Ark. 367, 719 S.W.2d 434 (1986). Beverly's interpretation of provision C strains the plain meaning of the population based methodology. We conclude the Commission's interpretation is consistent with the population based methodology as a whole and is therefore much more reasonable.

Also with respect to this first criterion of need, Beverly argues the Commission erred in not considering the number of existing beds within a close proximity of Drew County although outside the county itself. Beverly points out that 139 beds were recently approved within a 25-mile radius of Monticello, the county seat of Drew County. Beverly claims the Commission considered the effect of the 139 beds outside Drew County when it reviewed the criterion of economic feasibility but refused to go outside the county and consider the 139 beds when reviewing the criterion of need. This inconsistency, argues Beverly, is willful and unreasoning action and therefore arbitrary and capricious.

The requirement that administrative action not be arbitrary or capricious is less demanding than the requirement that it be supported by substantial evidence. *Woodyard* v. *Arkansas Diversified Ins. Co.*, 268 Ark. 94, 594 S.W.2d 13 (1980). To set aside the Commission's action as arbitrary and capricious, Beverly must prove that the action was a willful and unreasoning action, made without consideration, and with a disregard of the facts or circumstances of the case. *Partlow* v. *Arkansas State Police Comm'n*, 271 Ark. 351, 609 S.W.2d 23 (1980).

The determination that there was a need for a new nursing home in Drew County was made in accordance with the Commission's population based methodology requiring it to consider evidence of need within a "service area" which is defined in provision A as a "county." The Commission did not go outside the county boundary when it reviewed the criterion of economic feasibility as Beverly asserts. Rather, the Commission merely expressed a concern for the financial feasibility of a new nursing

home in Drew County given the fact that recently approved beds existed in the surrounding area. Considering need based on county boundaries as service areas is certainly reasonable. In fact, such a procedure is consistent with the legislature's mandate that, during the moratorium on approval of new nursing homes while the Commission was promulgating its rules and regulations, the Agency consider permit applications on a county-by-county basis. *See* Ark. Code Ann. § 20-8-106(a)(3) (Repl. 1991). Therefore, we conclude that the Commission's action in limiting its consideration of the criteria of need to within the Drew County limits was a reasonable action made in consideration of its policies and procedures. This action was not arbitrary nor capricious.

The second criterion Beverly challenges relates to economic feasibility. *See* Section VIII. A.c., Health Services Commission Policies and Procedures for Permit of Approval Review. In its findings and recommendations, the Agency explained that "[t]his criterion includes the applicant's ability to obtain capital financing in order to bring the projection to fruition and generate adequate revenues to retire any debt, cover operational costs, and provide quality services without excessive cost." Beverly asserts the evidence does not support a finding that this criterion has been met because, although the Agency found that Monticello Nursing Home had the ability to obtain financing, it did not conclude that any of the proposed facilities would be able to "generate adequate revenues to retire any debt, cover operational costs, or provide quality services without excessive costs." Because the Commission never made such a finding, Beverly argues there is not substantial evidence to support the Commission's decision, especially in light of the Agency's expressed concern for the financial feasibility of any new nursing home in Drew County.

Beverly supports this argument with the testimony of its expert, Larry Taylor, who testified there was a surplus of beds in the county's surrounding area and someone is "going to suffer adverse effect from not having enough patients to fill up the beds." Beverly further supports its argument with the testimony of Dr. Ralph Maxwell, the owner of the proposed Monticello Nursing Home, that the purchase price of the land needed for the construction of Monticello Nursing Home is unknown.

The Commission responds by pointing out that it specifically

found that Monticello Nursing Home had lower costs, lower annual debt service, and more local support than the other applicants. The Commission explained its expressed concern for the financial feasibility as merely a genuine concern for the success of any new nursing home in the county.

Obviously, no enterprise entering a new business has a guarantee of financial success. Moreover, the Commission is not required to find a guarantee of success before it grants a permit. Rather, the Commission is required to consider the applicant's relative chances for economic success. The Commission did so and after reviewing the foregoing evidence, concluded that, as Monticello Nursing Home was the only applicant with approved financing and expressed local support, it was the applicant with "the best chance of making it."

■■ At this level of review, we do not judge the credibility of the evidence. We will not substitute our judgment for that of the Commission's absent an abuse of its discretion. *Green* v. *Carder*, 282 Ark. 239, 667 S.W.2d 660 (1984). The Commission concluded, albeit without using the buzz words Beverly asserts are necessary, that Monticello Nursing Home was the most economically feasible of the three proposed nursing homes. This decision is supported by the substantial evidence of a loan commitment letter, numerous letters of expressed local support, an established need for new beds in the county, and an application stating a lower construction cost than the other two applications. Where the decision is supported by substantial evidence, it follows that the decision cannot be classified as arbitrary or an abuse of discretion. *See Partlow, supra.*

■ Beverly's third point of error concerns the criterion of cost containment. *See* Section VIII. A.d., Health Services Commission Policies and Procedures for Permit of Approval Review. Beverly argues the evidence of record does not demonstrate that construction of a new nursing home in Drew County will foster cost containment by improving the efficiency or productivity of the health care currently provided in Drew County. To support this final argument, Beverly relies on its previous two arguments and alleges that because there is a surplus of beds in the Drew County area, there is no need for a new nursing home within Drew County and such a nursing home would not be economically

feasible; therefore it is arbitrary, capricious, and an abuse of discretion for the Commission to conclude that a new nursing home in Drew County would improve the efficiency and quality of care there. Because we have previously rejected Beverly's two arguments that form the underlying premise of this third and final argument, we conclude this final argument is without merit.

We note however, that in its reply brief, Beverly attempts to bolster this final claim with the legislative history of the Federal Health Services Act. Beverly cites us to a report of the Senate Committee on Labor and Human Resources where that Committee concluded that "[t]he highly technical nature of medical services, together with the growth of third party reimbursement mechanisms, acts to attenuate the usual forces influencing the behavior of consumers with respect to personal health services." S. Rep. No. 96, 96th Cong., 1st Sess. (1979), *reprinted in* 1979 U.S.C.C.A.N. 1306, 1357-58.

█ In its project findings and recommendations, the Commission recognized Beverly's concern that in the nursing home industry, competition does not always improve the quality of care. However, the Commission also recognized that there was currently only one nursing home in the county and that there was an expressed local desire for another locally-owned nursing home in the county. With this local desire in mind, the Agency concluded that the competition provided by a second nursing home in Drew County might well have a positive effect on the quality of care there. This conclusion reflects rational thought and is supported by substantial evidence in the record.

█ After reviewing the evidence and the Agency's written findings and recommendations to the Commission, which the Commission adopted, we conclude that Beverly has not met its burden on appeal. The evidence before the Commission was not so undisputed that fair-minded persons could not have reached the same conclusion as the Commission. The Commission carefully considered all three applications before it pursuant to its own policies and procedures. The Agency's findings, which the Commission adopted, reflect that all aspects, both positive and negative, of the decision to grant a permit were considered. The conclusion to grant a permit of approval to Monticello Nursing Home was based on the Commission's four criteria for review and

evidence that, of the three applicants, Monticello Nursing Home had proposed a lower construction cost for a 70 bed facility and a lower annual debt service. Monticello Nursing Home was the only applicant with a loan commitment letter. It was also the only applicant that had any proof of local support in the community. There was evidence before the Commission that favored the other applicants; however, the Commission concluded that because of the above-referenced factors, Monticello Nursing Home had the best chance for success and granted it a permit of approval for its proposed new nursing home. We conclude the decision to grant a permit of approval for the construction of a new 70 bed nursing home in Drew County was one which was within the Commission's discretion, reflects careful consideration of the requisite criteria, is supported by substantial evidence, and was not made arbitrarily, capriciously, or with an abuse of discretion.

Next, we consider separate appellant Hillsboro's two arguments. As its first point of error, Hillsboro claims the Commission properly promulgated criteria for review of applications in accordance with the Arkansas Administrative Procedures Act and then changed these criteria after all the applications for the Drew County project had been accepted. Hillsboro claims it was denied procedural due process as the criteria were changed in the midst of the application process without notice to Hillsboro or an opportunity to be heard. The Commission responds to this claim by arguing that the alleged change in its criteria for review was not a change at all, but an interpretation, which does not require notice and comment under our Administrative Procedures Act. In addition to its procedural due process argument, Hillsboro also claims its rights of contract were impaired and that the application of the allegedly changed criteria was *ex post facto*. Hillsboro claims these violations further infringed its substantive due process rights.

Hillsboro packs these four distinct claims into a mere two sentences in its brief. Two of these claims, those of *ex post facto* and impairment of contracts, were never presented to the Commission or trial court and should not be addressed for the first time on appeal. *Fisher* v. *Jones*, 306 Ark. 577, 816 S.W.2d 865 (1991). The substantive due process claim is merely asserted in Hillsboro's brief; there is no mention of the protected right that was violated and no analysis of why the Commission's actions

were not rational in a due process context. It is not apparent without further research that this argument is well-taken and without authority or convincing argument, we will not address this issue on appeal. *RLI Ins. Co.* v. *Coe*, 306 Ark. 337, 813 S.W.2d 783 (1991).

In our review of the record with respect to Hillsboro's procedural due process claim, it appears that what Hillsboro complains of as a rule change and the Commission defends as an interpretation of a rule was actually a clarification of how the Commission would apply its review priorities under its population based methodology for determining need. The criteria Hillsboro complains of as being changed midstream appear in the application form as part of the population based methodology. When the population based methodology is used to determine need, as was done in the Drew County project, there is a list of nine "review priorities" which are applicable. These review priorities appear as follows:

E.   REVIEW PRIORITIES - these ranked priorities apply to the Population Based Methodology.

WEIGHT
(POINTS)

9     1.   Applicant homes that have not had a life threatening compliance issue in the last two (2) calendar years.

8     2.   Applicants with nursing homes of below 70 licensed beds applying to expand up to, or closer to, 70 beds.

7     3.   Applicants proposing a major renovation or the replacement of an older facility.

6     4.   Applicants with the highest occupancy rate.

| WEIGHT (POINTS) | | |
|---|---|---|
| 5 | 5. | Applicants who have a record of higher nursing staffing ratios. (Higher staffing ratios are defined as exceeding the minimum licensure requirements. This will be documented by the latest Office of Long Term Care survey). |
| 4 | 6. | Applications by small (70 bed or less) rural (towns of 8,000 or less) hospitals. |
| 3 | 7. | Applicants with lower proposed construction costs of applicable quality. |
| 2 | 8. | Applicants proposing to develop a facility or wing for Alzheimer patients in an area without such a facility. |
| 1 | 9. | Applicants proposing to construct additional space to train students enrolled in, and as a part of a state approved nursing education program that would lead to licensure. |

The record reveals that, with respect to two counties in the state, the Commission was accepting applications for a new nursing home as opposed to applications for expansion of an existing nursing home. The record also reveals that the Commission received a letter requesting clarification of how it intended to apply these criteria to the applications for new nursing homes. In response to this letter, the Commission first published notice of its intent to consider the nursing home standards in the newspaper and then considered the review priorities at its July 12, 1989 meeting. At the July 12, 1989 meeting, the Commission concluded that six of the nine review priorities did not apply to applications for new nursing homes. Only priorities 6, 7, and 9

would be applied to applications for new homes. Hillsboro was not present at this meeting and did not make any comments, written or oral, to the Commission at this time. However, Hillsboro immediately began complaining to the Commission that application of only three of the nine priorities would prejudice Hillsboro because its good reputation and successful operation of its existing nursing homes would not be considered when reviewing the three applications. Hillsboro then filed its application on the deadline of July 31, 1989.

In response to Hillsboro's complaints, the Commission decided to give Hillsboro the statutory notice and comment opportunity. On September 13, 1989, after the 20 days notice required by the Administrative Procedures Act, and after the applications had been accepted but before the Agency reviewed them and issued its findings and recommendations, the Commission held another hearing and again concluded it would only apply three of the nine review priorities to applications for new homes.

In its findings and recommendations, the Commission gave a well-reasoned and detailed explanation of all nine review priorities and why they were or were not being applied to the three applications for a new nursing home in Drew County. All three applications were analyzed under the same three review priorities. The Commission's actions in so applying the review priorities were consistent and very reasonable.

For the Commission to have applied the other six priorities to these applications would have been unreasonable. For example, the first priority refers to "applicant homes that have not had a life threatening compliance issue in the last two years." Obviously, it is impossible for a new nursing home to have a record of life threatening compliance issues; thus, it was reasonable for the Commission to conclude that this review priority refers to the facilities applying for expansions rather than to new facilities. The Commission reached a similar conclusion with respect to priorities two through five. The Commission also concluded that priority eight would not be applied because of the uncertainty regarding the licensing procedure of an Alzheimer's wing.

As it stands today, none of the priorities have been changed in any manner. All nine of the Commission's population

based methodology review priorities still exist for the Commission to apply whenever appropriate. In fact, Section VII of the Commission's Policies and Procedures for Permit of Approval Review anticipates such a varied application of review criteria when it states "the procedures and criteria adopted and utilized by the Agency for conducting the review covered by this section may vary according to the purpose of which a particular review is being conducted[.]" Therefore, we conclude, no matter what label any of the parties places on it, the Commission's actions in applying only three of the nine review priorities did not amount to a change of its rules or procedures requiring compliance with the Administrative Procedures Act. The fact that the Commission wrote Hillsboro a letter indicating it was considering a "rule change" does not a "rule change" make; nor does the fact that the Commission held a hearing after announcing its intention to apply only the three priorities make the Commission's actions a "rule change." The letter and hearing are merely evidence of the Commission's concern that it apply its nine review priorities in a rational and well-reasoned manner. In short, Hillsboro received all the process that was due it, and we affirm the Commission's application of the three priorities.

Hillsboro's second claim on this appeal is that the Commission's decision was arbitrary, capricious and an abuse of discretion because all nine of the review priorities were not applied. We refer to our review of the record with respect to Hillsboro's first claim and conclude the Commission's decision was well-reasoned and supported by substantial evidence. It follows that the decision was not arbitrary, capricious, nor an abuse of discretion. *Partlow* v. *Arkansas State Police Comm'n*, 271 Ark. 351, 609 S.W.2d 23 (1980). Even if we disagreed with the Commission's decision, we could not substitute our own conclusions for that of the Commission's. *Green* v. *Carder*, 282 Ark. 239, 667 S.W.2d 660 (1984). The Commission's decision is affirmed in all respects.

DUDLEY, J., dissents.

BROWN, J., not participating.

ROBERT H. DUDLEY, Justice. The crux of this case is whether the Commission's decision was arbitrary. If there were a need for another nursing home the decision was reasonable, but if

there were no need it was arbitrary.

"Need" is determined by use of a Commission formula based upon population and a "utilization based" method. By using that formula the Commission, in December 1988, published data which stated that in 1992 Drew County would need thirty-nine (39) additional nursing home beds. The Commission invited applications from persons who were interested in meeting that 1992 need. Beverly Enterprises-Arkansas, Inc. already had a 124-bed nursing home in Drew County. In July 1989, after the Commission published its data, Beverly, Monticello Nursing Home, and Hillsboro Manor Nursing Home, Inc., each applied to the Commission for approval of a seventy-bed nursing home. In the fall of 1989 the Commission approved a sixteen-bed expansion for Beverly. *When the Commission approved the sixteen beds for Beverly, the original need of thirty-nine beds was reduced to a need of twenty-three beds.*

In its finding of fact the Commission found:

> Drew County shows a need for 39 additional beds in 1992. Sixteen were approved for the only nursing home in the County. That facility is now approved for 140 beds. *There is a need for 23 additional beds.* Drew County qualifies under the amendment. [Emphasis supplied.]

The pivotal question in this case is simple. Was there a need for thirty-nine beds or was there a need for twenty-three beds? If the need was for thirty-nine beds then the Commission's action was reasonable under its regulations which are set out below, but if the need was for only twenty-three beds, the Commission's action was in violation of its regulations. The majority opinion does not discuss the issue, and I can only guess that the majority thinks the Commission's finding, quoted above, is inconclusive in some manner. It seems to me that it clearly sets out that the need at the time of the hearing is "for 23 additional beds." However, for the sake of full discussion of the issue, I will assume that majority thinks the above quoted finding is inconclusive, and we must decide how many additional beds were needed. That question can only be answered by deciding when the "need" was to be determined. If it were to be determined on the publication date of the December 1988 data, then the "need" existed and the Commission's action was reasonable, but, if it were to be

determined at the time of the hearing or at the time of the Commission's ruling, the action was arbitrary because, by that time, Beverly had been approved for the sixteen beds, and there was a "need" of only twenty-three beds.

It would be illogical and senseless to determine the need as of the publication date of the December 1988 data, because, if that were the determinative date, the "need" would never be filled. The December 1988 data will always show a prospective need of thirty-nine beds in 1992. That will be true even after Beverly builds its sixteen beds and even if Monticello is allowed to build seventy beds. Thus, the publication date alone cannot logically be the controlling date. It is just as senseless to determine "need" on the date of applications alone, because that date does not reflect the beds approved after the applications were submitted but before the hearing on those applications. If the stated "need" that existed on application date was the determinative date, and was not subject to modification because of the later approvals, then a need of thirty-nine beds would still exist. A wholly new nursing home could still apply for approval since the need for thirty-nine beds would still exist. Such an interpretation would also be senseless. Clearly, approval of beds granted after the application date must be taken into account in determining need. Consequently, the date of the hearing and the date of the finding of fact is the only logical date for determining "need." This is most likely the reason that the Commission, in its finding of fact, as quoted at the beginning of this opinion, found a "need" of twenty-three beds.

The Commission's regulation provides:

> In counties where the Population Based Bed Need Formula indicates a need for at least 35, but less than 70, nursing home beds and the existing facilities in the service area cannot utilize more than half of that need without exceeding 140 beds, the Commission may grant a permit of approval for a new 70 bed nursing home.

The first requirement of the above quoted regulation is a need of "at least 35" nursing home beds before "the Commission may grant a permit of approval." That need of "at least 35" nursing home beds did not exist at the date of the hearing. At that time, there was a need of only twenty-three beds. Thus, the

Commission did not follow its own regulations and, as a result, acted in an arbitrary manner.