Brenda Deann BIRMINGHAM, by her
Guardian, Rose BIRMINGHAM,
Plaintiffs,

v.

The OMAHA SCHOOL DISTRICT; David
Land, Superintendent of the Omaha
School District; Randy J. Centers, Prin-
cipal of the Omaha School District;
Larry Gilbert; Larry Matlock; Lanny
Fausett; Pam Gass; David Arnold; Bill
Curtis; Mike Fulton, as Current or For-
mer Members of the Omaha School
Board; James Strain, Omaha High
School Special Education Teacher; Bill
Gregg; Boone County Independent Liv-
ing Center, Inc.; Lee Fraiser, Director,
Arkansas Department of Human Ser-
vices; Sue Habermehl, Jointly and Sev-
erally, Defendants.

No. Civ. 98–3030.

United States District Court,
W.D. Arkansas,
Harrison Division.

Aug. 14, 1998.

Christopher O'Hara Carter, Flippin, AR, for Brenda Deann Birmingham by Rose Birmingham.

W. Paul Blume, Little Rock, AR, for Omaha School Dist., Randy J. Centers, Larry Gilbert, Larry Matlock, Lanny Fuefett, Pam Gass, David Arnold, Bill Curtis, Mike Fulton, James Strain.

Frank Alan GoBell, Arkansas Dept. of Human Services, Office of Chief Counsel, Little Rock, AR, for Lee Fraiser, Sue Habermehl.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, District Judge.

Plaintiffs filed this complaint pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400–1485 (1990).[1] Defendants Lee Fraiser, former Director of the Arkansas Department of Human Services ("ADHS") and Sue Habermehl, Consultant of the Adult Protective Services Division of the ADHS, move to dismiss plaintiffs' complaint as time barred.

### I. FACTS

Plaintiff Brenda Deann Birmingham is mentally handicapped and suffers from cere-

---

1. The IDEA was revised in 1997 by the Individuals with Disabilities in Education Act Amendments of 1997 (the "Amendments"), Pub.L. No. 105–17. In general, the Amendments became effective on the date of their enactment, June 4, 1997. Certain section of the Amendments, however, were not effective until after July 1, 1998. See § 201(a)(2)(C). Plaintiffs filed their complaint on April 27, 1998, however, all of the acts leading up to the filing occurred prior to the effective date of the Amendments. Thus, we will apply the IDEA to this case as it existed prior to the effective date of the Amendments. The Eighth Circuit has stated that this is the approach that should be taken in cases where the plaintiff filed suit after the effective date of the statute, but where the "events in suit" occurred prior to such date. Maitland v. University of Minn., 43 F.3d 357, 361 n. 3 (8th Cir.1994) (quoting Landgraf v. USI Film Prods., 511 U.S. 244, 280, 114 S.Ct. 1483, 1505, 128 L.Ed.2d 229 (1994)).

bral palsy. From 1984 until her high school graduation in May, 1995, Brenda attended school in the Omaha School District in Omaha, Arkansas, and received special education services as a disabled student.

On May 3, 1994, Omaha High School ("Omaha") developed an "individual educational plan" ("IEP") for Brenda.[2] The IEP established that Brenda would be classified as a junior for the upcoming 1994–95 school year, and would graduate from Omaha in May, 1996.

Plaintiff Rose[3] Birmingham, Brenda's mother, asserts that on Friday, April 28, 1995, Brenda did not return home from school because James Strain, a special education teacher at Omaha, convinced Brenda to move out from her mother's home and into Boone County Independent Living, Inc. ("Independent Living"). Rose contends that Strain and/or other Omaha Public School officials contacted Sue Habermehl, at ADHS, and that Habermehl took Brenda into voluntary protective custody pursuant to Arkansas Code Annotated § 5–28–101.[4]

A petition was subsequently filed by the ADHS in Boone County Probate Court on May 1, 1995, and, after a hearing was held on May 15, 1995, the court permitted Brenda to voluntarily place herself into the protective custody of the ADHS and to enroll in Independent Living. Thus, the ADHS was granted temporary protective custody over Brenda pending a hearing on long-term protective custody.

Rose contends that as soon as she was removed as Brenda's de facto guardian, the Omaha School District conspired with the ADHS to graduate Brenda one year early by changing her classification from a junior to a senior. Rose asserts that the motive behind the decision to graduate Brenda early was to prevent additional federal funds from being spent on Brenda's education.

Rose contends that she requested to attend an IEP meeting that was scheduled for Brenda on May 10, 1995, however, she was informed that the IEP meeting had been canceled due to the decision to graduate Brenda one year early. Rose further contends that she was denied access to Brenda's records by officials with the Omaha School District. Rose asserts that she sent a letter to David Land, Superintendent of the Omaha School District, requesting a hearing before the school board to address Brenda's right to a free appropriate public education under the IDEA, but that the request was denied. Brenda subsequently graduated from Omaha.

Brenda returned home on July 7, 1995, and upon examination by a doctor, was diagnosed with Trichomonas, which is usually transferred by sexual contact. Rose contends that Brenda contracted Trichomonas through sexual abuse she suffered while a resident at Independent Living.

In August of 1995, Rose requested that the Arkansas Department of Education ("ADE") investigate her complaint that Brenda was denied her right to a free appropriate public education under the IDEA. See Plaintiffs' Exhibit "3." An initial report was issued by the ADE on November 17, 1995, however, the United States Department of Education determined that the ADE closed its investigation without addressing all of the issues, and, thus, remanded the complaint to the ADE. The ADE subsequently revisited plaintiffs' complaint and issued a final report on November 15, 1996, which concluded that Brenda's right to a free appropriate public

---

**2.** An "individual education plan" is:

> a written statement for each child with disabilities developed in any meeting by a representative of the local educational agency or an intermediate educational unit who shall be qualified to provide, or supervise the provision of, specially designed instruction to meet the unique needs of children with disabilities, the teacher, the parents or guardian of the child, and, whenever appropriate, the child.

Ark.Code Ann. § 6–41–217(b)(2) (Repl.1993).

**3.** We note that plaintiff's name appears as both "Rose" and "Rosa" throughout the record. The court uses "Rose" as that is how it appears in the style of the case.

**4.** Arkansas Code Annotated § 5–28–101(9)(C) (Repl.1997) provides that "[i]n situations where exploitation, prevention of injury, and protection of the person and his property are at issue, protective services shall include seeking the appointment of a guardian or seeking protective custody...."

education was not violated when Omaha graduated her in 1995 instead of in 1996. *Id.*

Rose brings this action under the IDEA against defendants for conspiracy to deprive Brenda of her right to a free appropriate public education. Plaintiffs also assert that defendants deprived Brenda of her right to free association under the First and Fourteenth Amendments and deprived her of her right to be free from cruel and unusual punishment as guaranteed by the Eighth and Fourteenth Amendments. Plaintiffs are seeking damages and reasonable attorneys' fees.

## II. DISCUSSION

### A. The IDEA

The IDEA was enacted to address congressional findings that the special education needs of children with disabilities were not being fully met in the United States. *See generally* 3 *Americans with Disabilities Practice and Compliance Manual,* § 11:1 at 8 (1992). Although originally designated the Education of the Handicapped Act (the "EHA"), the Education of the Handicapped Act Amendments of 1990 officially renamed the statute as the Individuals with Disabilities Education Act.

It is unnecessary for the court to explain the structure of the IDEA in great detail. Numerous cases on the IDEA and its forerunner, the EHA, perform that function. *See, e.g., Honig v. Doe,* 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988). For purposes of the present action, it is only necessary to note that the IDEA requires the states, as a condition of receiving federal funds, to provide all disabled students in their jurisdiction with a "free appropriate public education" as defined by the IDEA. 20 U.S.C. § 1401(a)(18) (1990).

If the student's parents or legal guardian are unhappy with the education being provided to their child, the IDEA requires the states to provide them with an opportunity "to examine all relevant records with respect to the identification, evaluation, and educational placement of the child" and "to obtain an independent educational evaluation of the child" to determine whether their child is entitled to special education. 20 U.S.C. § 1415(b)(1)(A) (1990). The IDEA also provides the parents or guardian with "an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(1)(E) (1990). Whenever such a complaint has been received, the IDEA ensures that "the parents or guardian shall have an opportunity for an impartial due process hearing...." 20 U.S.C. § 1415(b)(2) (1990). The IDEA also spells out the minimum due process protections to be provided at this hearing.

Rose did not receive an "impartial due process hearing," although she contends in her complaint that one was requested. Rose did request that the ADE investigate her complaint and, as stated above, the ADE determined that Brenda's right to a free appropriate public education was not violated by defendants.

Under the IDEA, any party aggrieved by the findings and decision rendered by a state educational agency "shall have the right to bring a civil action with respect to the complaint presented ... in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy." 20 U.S.C. § 1415(e)(2) (1990). The IDEA further provides that "[i]n any action or proceeding brought under this subsection, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents or guardian of a handicapped child or youth who is the prevailing party." 20 U.S.C. § 1415(e)(4)(B) (1990). Plaintiffs are asserting causes of action under both § 1415(e)(2) and § 1415(e)(4)(B).

We now turn to the issue of whether those claims are barred by the statute of limitations. This issue is one of first impression for the court and has not been addressed, at least in a published opinion, by the Court of Appeals for the Eighth Circuit.

### B. The Statute of Limitations

■ The IDEA does not set a time limit for actions brought under its provisions.

When a federal statute does not contain a limitations period, "courts must select 'the most appropriate or analogous state statute of limitations.'" *Egerdahl v. Hibbing Community College,* 72 F.3d 615, 617 (8th Cir. 1995) (*quoting Goodman v. Lukens Steel Co.,* 482 U.S. 656, 660, 107 S.Ct. 2617, 2620, 96 L.Ed.2d 572 (1987)). "While this practice has been called at best uncertain and at worst arbitrary, the settled practice has [nevertheless] been to ·adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so." *Powers v. Indiana Dept. of Educ., Div. of Special Educ.,* 61 F.3d 552, 555 (7th Cir.1995) (internal quotation marks and citations omitted).

Defendants urge the court to adopt the "short" limitations period found in the Arkansas Administrative Procedure Act. Specifically, under Arkansas law, any person who suffers an adverse decision by a state agency is entitled to judicial review of that agency's final decision, however, the proceedings for review must be instituted within thirty days after service of the agency's final decision. Ark.Code Ann. § 25–15–212(a) & (b)(1) (Repl.1996). Defendants assert that if the thirty-day limitation period applies to this case, plaintiffs' IDEA claims are barred because the ADE's determination was issued on November 15, 1996, and this lawsuit was filed on April 27, 1998, more than thirty days after the ADE's final decision.

The Eighth Circuit has held that "[w]hen borrowing a state statute of limitations for a federal cause of action, our first task is to 'characterize the essence of the claim in the pending case.'" *Aaron v. Brown Group, Inc.,* 80 F.3d 1220, 1223 (8th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 361, .136 L.Ed.2d 252 (1996) (*quoting Wilson v. Garcia,* 471 U.S. 261, 268, 105 S.Ct. 1938, 1942, 85 L.Ed.2d 254 (1985)) (holding that § 1983 claims are best characterized as personal injury actions). The court stated that "[t]he characterization of a claim is a question of federal law." *Id.*

Thus, we must first characterize the essence of plaintiffs' claims. Plaintiffs bring two claims for relief under the IDEA: (1) a claim under § 1415(e)(2) for judicial review of a state agency's findings and decision; and

(2) a claim under § 1415(e)(4)(B) for attorneys' fees incurred in connection with the underlying educational dispute.

Some courts have held that a claim for attorneys' fees under 1415(e)(4)(B) is not an independent cause of action, but instead is a claim ancillary to plaintiffs' underlying educational dispute brought pursuant to § 1415(e)(2). *See, e.g., Powers,* 61 F.3d at 556; *Janzen v. Knox County Bd. of Educ.,* 790 F.2d 484, 487 (6th Cir.1986). *But c.f. Zipperer By and Through Zipperer v. School Bd. of Seminole County, Fla.,* 111 F.3d 847, 851 (11th Cir.1997) (holding that IDEA provides two distinguishable causes of action under § 1415(e)(2) and § 1415(e)(4)(B)).

In deciding this issue, the court in *Powers* relied, in part, on Judge Kocoras' opinion in *Reed v. Mokena School Dist. Number 159, Will County, Ill.,* No. 94 C 476, 1994 WL 163989 * 3 (N.D.Ill. Apr. 29, 1994) (unpublished opinion), where he stated that "prevailing in a suit for attorneys' fees in federal court is contingent upon and inextricably bound to prevailing on the underlying administrative action." Therefore, Judge Kocoras concluded that it "makes more sense to apply a statute of limitations which finds some relevance to the administration of the IDEA itself, rather than turning to an unrelated, external statute of limitations...." *Id.*

We agree. For example, in this case, if we determined that plaintiffs' causes of action deserved to be characterized differently, then different limitations periods would apply to each claim. That result, while on its face may not seem so illogical, when applied, is, in our opinion, unfavorable. The reason is that if plaintiffs' claim for judicial review of an administrative action, under § 1415(e)(2), is time barred, then plaintiffs' claim for attorneys' fees, under § 1415(e)(4)(B), fails because there is no way that plaintiffs can be seen as the prevailing party. Thus, plaintiffs' would not be entitled to an award of attorneys' fees under § 1415(e)(4)(B). Plaintiffs' claim for attorneys' fees is necessarily connected to their claim under § 1415(e)(2). Therefore, we conclude, that plaintiffs' claim for attorneys' fees is not an independent cause of action, but instead is a claim ancillary to plaintiffs' underlying educational dis-

864

pute. Therefore, both claims, in our view, should be characterized in the same way, as requests for administrative review of state agency action.

■ The second step is to determine "what state cause of action is most closely analogous to the federal claim." *Aaron*, 80 F.3d at 1223. The Eighth Circuit stated that:

> [s]tate policy becomes relevant only after we have selected the most closely analogous state cause of action. At that point, we defer to the state's judgment about how to balance the need to enforce the statute with the need to weed out stale claims, by borrowing the statute of limitations for the most closely analogous state cause of action, unless that statute would frustrate the purposes of the federal statute on which the claim is based.

*Id.*

A majority of the courts have concluded that the state administrative procedure laws are most analogous to the federal claims possible under IDEA and that the "short" limitations periods found within such laws are consistent with the IDEA's goal of prompt resolution of disputes over the education of children with disabilities. *See, e.g., Cleveland Heights–University Heights City Sch. Dist. v. Boss By and Through Boss*, 144 F.3d 391, 396–97 (6th Cir.1998) (applying Ohio's forty-five-day statute of limitations); *Zipperer*, 111 F.3d at 850–52;[5] *Livingston Sch. Dist. Numbers 4 and 1 v. Keenan*, 82 F.3d 912, 914–18 (9th Cir.1996) (applying Montana's thirty-day statute of limitations); *Powers*, 61 F.3d at 554–559 (applying Indiana's thirty-day statute of limitations); *Amann v. Town of Stow*, 991 F.2d 929, 931–934 (1st Cir.1993) (applying Massachusetts' thirty-day statute of limitations); *Adler by Adler v. Education Dept. of State of N.Y.*, 760 F.2d 454, 455–460 (2nd Cir.1985) (apply-

ing New York's four-month statute of limitations).

■ In determining whether a state-created cause of action is sufficiently analogous to the cause of action created by the IDEA to justify application of the state limitations period, we must "compare the scope of judicial review permitted under state law to the scope of judicial review provided in the [IDEA]." *Schimmel by Schimmel v. Spillane*, 819 F.2d 477, 481 (4th Cir.1987). As stated above, some courts have concluded that the scope of review provided under state procedure law is analogous to the scope of review provided in the IDEA, and, as such, have held that the limitations periods found in those laws are applicable. *Id.*

Other courts, however, have found that the scope of review provided under state law is narrower that the scope of review under the IDEA and, thus, have concluded that the state cause of action is not sufficiently similar to the federal cause of action created by the IDEA. *See, e.g., Spillane*, 819 F.2d at 479–83 (applying Virginia's one-year statute of limitations for personal actions for which no other limitations period is otherwise proscribed); *Scokin v. State of Tex.*, 723 F.2d 432, 435–38 (5th Cir.1984) (applying Texas' two-year statute of limitations generally applicable to tort claims); *Tokarcik v. Forest Hills Sch. Dist.*, 665 F.2d 443, 447–55 (3rd Cir.1981) (rejecting thirty-day limitations period and holding that either Pennsylvania's two-year or six-year limitation period applies); *Monahan v. State of Neb.*, 491 F.Supp. 1074, 1083–85 (D.Neb. 1980) (rejecting Nebraska's thirty-day limitations period).

In the present case, the scope of judicial review under Arkansas law would be as follows: within thirty days of service of the petition for review, the agency must transmit to the court the entire record of the proceeding for review. Ark.Code Ann. § 25–15–212(d)(1) (Repl.1996).[6] A party may submit

---

**5.** We note that the Eleventh Circuit held that the Florida's four-year limitations period should be applied to an action for attorneys' fees brought under § 1415(e)(4)(B) of the IDEA. The Eleventh Circuit has indicated in *dicta*, however, that it would likely adopt the thirty-day limitations period for an appeal of an administrative proceeding under § 1415(e)(2). *See JSK By and Through JK*

*v. Hendry County Sch. Bd.*, 941 F.2d 1563, 1570 n. 1 (11th Cir.1991). In deference to the Eleventh Circuit, however, we acknowledge that it has not affirmatively ruled on the limitations period for claims brought under § 1415(e)(2). *Zipperer*, 111 F.3d at 850 n. 1.

**6.** We note that in 1997 the Arkansas Legislature amended the Children with Disabilities Act of

additional evidence if the court finds that such evidence is "material and that there were good reasons for failure to present it in the proceeding before the agency...." Ark. Code Ann. § 25–15–212(f) (Repl.1996).

> The review shall be conducted by the court without a jury and shall be confined to the record, except that in cases of alleged irregularities in procedure before the agency, not shown in the record, testimony may be taken before the court. The court shall, upon request, hear oral argument and receive written briefs.

Ark.Code Ann. § 25–12–212(g) (Repl.1996).

■ The reviewing court may affirm the decision of the agency or remand the case for further proceedings. Ark.Code Ann. § 25–15–212(h) (Repl.1996). In addition, the reviewing court may:

> reverse or modify the decision if the substantial rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the agency's statutory authority;
>
> (3) Made upon unlawful procedure;
>
> (4) Affected by other error or law;
>
> (5) Not supported by substantial evidence of record; or
>
> (6) Arbitrary, capricious, or characterized by abuse of discretion.

*Id.* It appears that the Arkansas courts consider this scope of review to be quite narrow. For example, in *Fouch v. State, Alcoholic Bev. Control Div.*, 10 Ark.App. 139, 141–42, 662 S.W.2d 181, 183 (1983), the Arkansas Court of Appeals explained the rules governing judicial review of decisions of administrative agencies:

> [t]he reviewing court may not displace the Board's choice between two fairly conflicting views even though the court might have made a different choice had the matter been before it *de novo*. The reviewing court may not set aside a board's decision unless it cannot conscientiously find from a review of the entire record that the evidence supporting the decision is substantial.

In other words, a reviewing court cannot substitute its judgment for that of an administrative agency, "absent an abuse of discretion by that agency." *Green v. Carder*, 282 Ark. 239, 244, 667 S.W.2d 660, 662 (1984).

Under the IDEA, the scope of review is as follows: "the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(e)(2) (1990). The Eighth Circuit described the standard of review under the IDEA as "a less deferential standard of review than the substantial evidence test common to federal administrative law." *Independent Sch. Dist. No. 283 v. S.D. by Her parents J.D. and N.D.*, 88 F.3d 556, 561 (8th Cir.1996). The court noted, however, that "it still requires the reviewing court to give 'due weight' to agency decision-making." *Id.* (quoting *Board of Educ. of Hendrick Hudson Central Sch. Dist., Westchester County v. Rowley*, 458 U.S. 176, 206, 102 S.Ct. 3034, 3050–51, 73 L.Ed.2d 690 (1982)).

Thus, the scope of review under the IDEA differs in two respects from the scope of review under § 25–15–212: (1) under the IDEA, the court is required to hear addition-

---

1973, which mirrors the provisions of the IDEA. Before the 1997 Amendments, the Children with Disabilities Act did not provide for judicial review of hearings held to determine the educational status of a child. The Children with Disabilities Act now provides, however, that:

> [a]ny party aggrieved by the findings and decision made by the hearing office has the right to bring a civil action in either federal district court or a state court of competent jurisdiction pursuant to the Individuals with Disabilities

Act. Any aggrieved party shall have thirty (30) days after the hearing officer's decision to file an appeal in state court.

Ark.Code Ann. § 6–41–402(g) (Supp.1997). Therefore, it is clear that if plaintiffs were pursuing their claims under Arkansas law, a thirty-day statute of limitation would apply. Section 6–41–402 does not provide for the scope of review of an agency's decision, and, thus, we assume that the scope of review provided for in § 25–15–212 would apply.

al evidence, but under § 25–15–212, the court is only required to hear additional evidence if the court finds that such evidence is material and that there were good reasons for the failure to present it in the previous proceeding; and (2) under the IDEA, the court bases its decision on the preponderance of the evidence, but under § 25–15–212, the court may only reverse if the agency's decision is not supported by substantial evidence.

The Ninth Circuit addressed similar issues in its opinion in *Keenan.* The court held that "a civil action under the IDEA challenging an administrative hearing is more analogous to judicial review of an administrative appeal than to an action upon a liability created by statute." *Id.*, 82 F.3d at 916. The court stated that pursuant to the Supreme Court in *Rowley*, "deference is given to the hearing officer in IDEA actions as well as in administrative appeals" brought pursuant to state law. *Id.*

> Accordingly, differences in the standard of review are relatively minor given the district court's quasi-appellate role under section 1415(e)(2). Similarly, the IDEA's requirement that the trial court accept additional evidence at the request of a party does not significantly distinguish the nature of the proceeding from appellate review of administrative actions, because in both cases the administrative record is usually the principal evidence before the reviewing court. By contrast, in an action upon a liability created by statute, there is no review of an administrative decision and no deference to administrative findings. The district court's decision is entirely independent.

*Id.* (internal quotation marks and citations omitted).

We conclude that the cause of action under Arkansas Code Annotated § 25–15–212 is the most analogous cause of action to plaintiffs' claims under the IDEA. The statute of limitations provided for by § 25–15–212 is thirty-days. We rust now determine whether application of this limitations period would frustrate the purposes of the IDEA.

■ The Fourth Circuit held that although the state cause of action was sufficiently analogous to the cause of action created un-

der the IDEA, application of the short limitations period would conflict with the federal policies underlying the IDEA. *Spillane*, 819 F.2d at 482. Specifically, the court stated that:

> [o]ur most serious concern in this regard arises from the fact that many parents of handicapped children may not be represented by counsel in the administrative due process hearings that precede suit under the EHA. IF parents are not represented by counsel at the due process hearings, then they may be unaware of and unfairly penalized by a very short limitations period for filing suit in district court.

*Id.* (footnote omitted).

In addition, the Fifth Circuit in *Scokin* found that a thirty-day limitations period was contrary to the IDEA's goal of parental involvement. *Id.*, 723 F.2d at 437. The court stated that "[t]hirty days is not enough time for parents to determine whether to pursue judicial review of their complaint" and that "[a] decision to jump from an administrative process to federal court nay involve obtaining or changing counsel." *Id.* (footnote omitted).

In response to these arguments, the First Circuit has opined that the potentially harsh effects of a short limitations period are mitigated by three factors, "which, taken together, so narrow any inconsistency with the goal of parental involvement as to permit application of the most analogous state law." *Amann*, 991 F.2d at 932 (internal quotation marks and citation omitted). First, the court in *Amann* noted that the IDEA requires school authorities to give parents notice "of all procedures available pursuant to this section." *Id.* (*quoting* 20 U.S.C. § 1415(b)(1)(D)) The court stated that "[s]everal courts have interpreted this provision to require notice of any applicable limitations period, in order to ensure that parents, who go through the administrative proceedings without aid of a lawyer do not lose their right to judicial review merely out of ignorance of the law." *Id.* (citations omitted).

Second, the court noted that a parent's only obligation during the thirty-day period following an agency's decision is to decide whether or not to sue under § 1415. Thus,

the parent is not saddled with the burdens of "factual investigation and legal research that face, say, a party who has just suffered or discovered an injury and is thinking about filing a lawsuit." *Id.*, 991 F.2d at 933.

Finally, the court in *Amann* stated that because the IDEA requires that IEPs be renewed annually, parents who "sleep on their rights" one year, will lose no more than one educational year, and will not have to wait long for a new opportunity to seek judicial review of the following year's IEP, if unsatisfactory. *Id.* We recognize that this provision of the IDEA is not beneficial to plaintiffs in this case because Brenda's IEPs were canceled due to her graduation and plaintiffs will not have another opportunity to seek judicial review.

We note that plaintiffs, in their perfunctory response, have not asserted any of these concerns nor have they presented the court with any other limitations periods which may be appropriate in this case. The court concludes that application of the thirty-day statute of limitations would not frustrate the purposes of the IDEA, and, thus is the appropriate limitations period to apply in this case. Therefore, because plaintiffs' complaint was filed more than thirty days after receipt of the ADE's final decision, plaintiffs' claims under the IDEA are time barred.

### III. CONCLUSION

For the reasons, set forth above, we conclude that plaintiffs' claim brought pursuant to the IDEA are barred by the applicable statute of limitations, and, thus, will be dismissed. Plaintiffs' complaint asserts, however, other, constitutional claims for relief that will survive defendants' motion to dismiss. Defendants contend that plaintiffs' cannot bring these constitutional claims, however, the IDEA expressly provides that as long as a plaintiff has exhausted the administrative procedures under the IDEA, he or she may pursue other remedies available under the Constitution or other Federal statutes. 20 U.S.C. § 1415(f) (1990). A separate order will be entered concurrently herewith.