# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1500

_____

| | | |
|---|---|---|
| Doug Feeney; Doreen Feeney; Prime-Line, Inc., an Arkansas Corporation, | * * * * | |
| Plaintiffs/Appellees, | * * | |
| v. | * * | |
| AT&E, Inc., a Nevada Corporation, | * * | Appeal from the United States |
| Defendant/Appellant, | * * | District Court for the Eastern District of Arkansas. |
| Frank Mitan; Sun Capital, Inc., a Florida Corporation, | * * * | |
| Defendants, | * * | |
| Kenneth Mitan, originally sued as John Smith, also known as John Adams Smith doing business as MergerOne, also known as John Smith, also known as John Adams, | * * * * * * | |
| Defendant/Appellant. | * | |

_____

Submitted: September 29, 2006
Filed: December 29, 2006

_____

Before RILEY and COLLOTON, Circuit Judges, and KYLE,[1] District Judge.

_____

COLLOTON, Circuit Judge.

In the fall of 2004, Kenneth Mitan reached an agreement with Doug and Doreen Feeney to buy the Feeneys' company, Prime-Line, Inc. Under the stock purchase agreement, Mitan's company, AT&E, Inc., purchased from the Feeneys all 300 outstanding shares of Prime-Line stock. When Mitan failed to make certain payments required by the agreement, the Feeneys filed an action against Mitan in the district court, claiming fraud in the inducement, conversion, and breach of contract. The complaint sought relief in the form of an injunction preventing the defendants from "further conversions" of Prime-Line, Inc.'s funds, a judgment of rescission of the Stock Purchase Agreement, a declaratory judgment finding the Feeneys to be the owners of Prime-Line, Inc., and damages in excess of $170,000.

On November 16, 2005, the Feeneys filed a motion for summary judgment and properly served Mitan by mail. Mitan did not file a timely response. The district court then sent Mitan a letter extending the deadline, and warning that if Mitan did not respond, the court would grant the motion for summary judgment. Mitan made no reply to the motion, and on December 22, 2005, the court entered an order stating that because Mitan filed no response, the court would "assume that the motion is well-taken," and granting the motion. The court then entered a judgment declaring that "[t]he Stock Purchase Agreement is rescinded and a declaratory judgment finding that Doug and Doreen Feeney are the sole-owners of Prime-Line, Inc. is GRANTED." The court awarded no damages and entered no injunction against "further conversions" of Prime-Line's funds.

_____

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota, sitting by designation.

On December 30, Mitan filed a motion to set aside the judgment under Federal Rule of Civil Procedure 60(b)(1), claiming that his failure to respond to the motion for summary judgment was due to problems in receiving mail. The district court concluded that the problems Mitan experienced with service of process were "caused by Defendant Mitan's neglect in failing to regularly check his mail," and denied the motion on that basis. The court summarily denied Mitan's motion to reconsider, and Mitan appeals the two orders. We affirm the court's decision insofar as it declined to set aside the declaratory judgment that the Feeneys are the sole owners of Prime-Line, Inc. We direct that the judgment be modified, however, to set aside the purported rescission of the Stock Purchase Agreement.

The district court's grant of summary judgment was the functional equivalent of a default judgment against Mitan, because it granted judgment without discussing the merits of the claim, based solely on Mitan's failure to reply. Federal Rule of Civil Procedure 60(b)(1) permits a district court to grant a defaulting party relief from judgment because of that party's "mistake, inadvertence, surprise, or excusable neglect." We review a district court's ruling on a 60(b)(1) motion for abuse of discretion. *Union Pacific R.R. Co. v. Progress Rail Servs. Corp.*, 256 F.3d 781, 782 (8th Cir. 2001).

The determination of excusable neglect "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 395 (1993). The relevant circumstances include "the danger of prejudice to [the non-moving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id*. The existence of a meritorious defense is also a relevant factor. *Union Pacific*, 256 F.3d at 782-783; *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 784 (8th Cir. 1998).

The district court's analysis focused exclusively on the reason for Mitan's default and concluded, correctly in our view, that Mitan's failure to respond to the motion for summary judgment was due to his own neglect in failing to check his mail. When evaluating a motion to set aside a default judgment, however, courts must do more than simply determine whether the movant had a satisfactory reason for his neglect. *Union Pacific*, 256 F.3d at 783. The text of the rule, which provides that certain "neglect" will be "excusable," contemplates that the courts are "permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness." *Pioneer*, 507 U.S. at 388. Whether the movant had a good reason for delay is a key factor in the analysis, *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 463 (8th Cir. 2000), but even without a satisfactory explanation, relief may be required where other equitable considerations weigh strongly in favor of setting aside the default judgment. *Union Pacific*, 256 F.3d at 783.

Although the district court's analysis was truncated, we conclude that the court properly refused to set aside the declaratory judgment that the Feeneys are the sole owners of Prime-Line, Inc. The most important factor in the analysis – reason for delay – weighs heavily against Mitan. Although Mitan claims that his failure to respond to the motion for summary judgment was due to asserted misconduct by the Feeneys, who allegedly caused him to be jailed by pursuing criminal charges, Mitan admits he was released from jail long before the motion was pending before the district court. Furthermore, Mitan provides no satisfactory excuse for his failure to receive mail concerning this action. Due to his travel obligations, Mitan relied on a relative to check his mail with a private mailbox company, but when the company began to require written permission of the mailbox owner to gain access to the mail, Mitan failed to coordinate with his relative to make the necessary arrangements. His failure to make adequate plans to receive his mail for two months, at a time when he was a defendant in a pending legal proceeding, was careless to the point of indifference. Mitan's indifference to logistical matters within his "reasonable control" weighs against him in the equitable balance. *Pioneer*, 507 U.S. at 395.

Mitan's late-filed response to the motion for summary judgment also failed to offer a meritorious defense to the court's declaratory judgment. The closing of the stock purchase agreement between Mitan and the Feeneys was contingent upon Mitan making a cash down payment of $500,000, but it is undisputed that Mitan paid only $309,319.26. Mitan obtained the $309,319.26 through loan agreements with third parties, using Prime-Line's accounts receivable as collateral. The parties dispute whether this leveraged buyout plan was permitted under the terms of Mitan's agreement with the Feeneys, but even if so, the agreement hinged on Mitan making the full payment. Without the down payment, there could be no closing and no transfer of Prime-Line stock to Mitan. The undisputed record, therefore, showed that Mitan failed to perform substantially under the terms of the contract, and he was not entitled to the benefit of the bargain – ownership of Prime-Line, Inc.

Although Mitan's delay was relatively brief (he sought relief under Rule 60(b) within eight days of the entry of judgment), the Feeneys have not demonstrated substantial prejudice from such a brief delay, and there is no showing that Mitan acted in bad faith, these factors do not outweigh Mitan's carelessness and the absence of any apparent meritorious defense. While we think the district court's analysis was too narrowly focused, our independent consideration of the relevant equitable considerations leads us to conclude that the district court did not abuse its discretion in denying Mitan's motion to set aside the declaratory judgment that the Feeneys are the sole owners of Prime-Line, Inc.

Our assessment of the equitable considerations is different with respect to the district court's judgment that the stock purchase agreement between the parties is "rescinded." We simply see no basis on the merits for that relief. The substantive law of Arkansas applies in this diversity action, and under Arkansas law, as well as basic principles of contract law, rescission is an appropriate equitable remedy when it restores the *status quo* by returning the parties to the positions they occupied before the contract. *Cardiac Thoracic & Vascular Surgery P.A., Profit Sharing Trust v.*

*Bond*, 840 S.W.2d 188, 193 (Ark. 1992); 26 Richard A. Lord, *Williston on Contracts* § 68:24 (4th ed. 2003). As a consequence, the party seeking rescission must return to the other party the substance of any consideration received. *Stanford v. Smith*, 260 S.W. 435, 437 (Ark. 1924); 26 *Williston on Contracts* § 68:24.

The district court's judgment did not restore the *status quo*. The Feeneys have not returned the $309,319.26 Mitan paid them toward the down payment. Mitan has not compensated the Feeneys for the loans he obtained using Prime-Line's accounts receivable as collateral – loans for which the Feeneys say they are now responsible. These debts might simply cancel one another out – that is, the Feeneys may be entitled to keep the $309,319.26 as damages in a breach of contract action for the liabilities that Mitan incurred against Prime-Line – but the record at this point is insufficient to support that conclusion. Arkansas courts reject rescission where, as here, the record does not permit a court to apply "credits and set-offs . . . to put the parties back to their original positions." *J.D. Fisher v. Jones*, 816 S.W.2d 865, 868 (Ark. 1991).

Mitan argues, without response from the Feeneys, that the district court's action did not substantially restore the *status quo*, and he thereby offers a decisive defense on the merits to the judgment of rescission. Given the lack of prejudice to the Feeneys from Mitan's eight-day delay in responding to the motion for summary judgment, and the absence of intentional delay or bad faith by Mitan, we conclude that notwithstanding Mitan's inadequate explanation for his untimely response, the district court should have granted relief from that portion of the judgment rescinding the stock purchase agreement. *See Union Pacific*, 256 F.3d at 783; *Johnson*, 140 F.3d at 785.

For these reasons, we affirm the court's order denying the motion to set aside the declaratory judgment that the Feeneys are the sole owners of Prime-Line, Inc., but we vacate the order in part, and remand with directions to grant AT&E's motion to set aside the judgment that "[t]he Stock Purchase Agreement is rescinded."

_____